[Nos. E002025, E002662. Fourth Dist., Div. Two. Mar. 13, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGIA LEE JENKINS, Defendant and Appellant.

[No. E003219. Fourth Dist., Div. Two. Mar. 13, 1987.]

In re GEORGIA LEE JENKINS on Habeas Corpus.

[Opinion certified for partial publication.[1]]

---

[1]Parts I and II are not published; they do not meet the standards for publication contained in rule 976.1, California Rules of Court.

COUNSEL

Victoria Sleeth, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Michael D. Wellington and Roberta L. Woodrick, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HEWS, J.—Defendant Georgia Lee Jenkins was convicted by a jury of one count of pimping (Pen. Code, § 266h). Imposition of sentence was suspended and probation was granted. Defendant has appealed from the order granting probation, which is deemed to be a judgment of conviction for purposes of appeal. (Pen. Code, § 1237.) The contentions urged on this appeal (E002025) are: (1) the evidence is insufficient to support the conviction, (2) the jury instructions defining the offense were misleading if not erroneous, (3) the court erred in denying a motion to dismiss based on the deportation of material witnesses, and (4) certain of the conditions of probation are invalid.

In conjunction with this first appeal defendant also seeks relief by writ of habeas corpus for the misconduct of a juror in allegedly concealing during voir dire facts indicating a lack of impartiality.

Defendant was charged with probation violations during the second year of the five-year probationary period. Two of the violation allegations were found to be true and more onerous conditions were imposed upon reinstatement of probation. The new terms included 30 days in county jail and payment of restitution in the amount of $1,000. Defendant has appealed from the order finding her in violation and imposing new conditions. On this appeal (E002662), she contends one of the conditions she was found to have violated is invalid and that the court lacked jurisdiction to order restitution.

FACTS

Salvador Pina, a deputy sheriff dressed in civilian clothing and wearing a concealed wireless transmitter, approached a residence in Thousand Palms

at approximately 9:30 p.m. on October 22, 1982. Within a few blocks of the residence there were three or four vehicles in which other officers were listening to transmissions from the device.

According to his trial testimony, Officer Pina joined a group of four or five young male Mexicans near the front door of the residence. One of the Mexicans knocked on the door but no one came. Pina rang the bell and the door was opened by defendant, who was wearing a white nightgown and talking into a wireless telephone. Defendant looked over the group for two or three seconds, then moved aside, permitting the men to enter.

Officer Pina followed the others into a room containing a number of other men, some coin-operated arcade video games, and a television showing unclothed men and women. A woman was asking the men "if they wanted to go to bed." Pina said he did and the woman, who said her name was Jackie, led him to a small area which had been partitioned off with plywood and bedsheets and furnished with a mattress on the floor.

Jackie asked Officer Pina to remove his clothes. He inquired "How much?" and she replied "Forty dollars." "Do I get a blow job and a fuck for this?" asked Pina. "Yes" replied Jackie. Pina said he had been told the price was $15 for one hour. Jackie said "Come next month, we're going to charge $50."

Officer Pina gave Jackie two $20 bills. She left, returning in two minutes or so with a basin of water. Jackie asked Pina to undress, saying she wanted to wash his "dick." She removed all of her clothing and when Pina had still not undressed she said: "You only had half-an-hour, and you've paid your $40 anyways. I don't care if you want to fuck or not."

The other officers broke open the front door and all the occupants were taken into custody. There were 17 men and 11 women. Several of the women were clad in scanty nightclothes or undergarments. Approximately 10 of the men were found to be Mexican nationals and were turned over to the Border Patrol for deportation.

A search warrant was obtained and the residence was searched. A video cassette player containing a porno movie was found in a closet. A cable ran from the machine to the television in the large room near the front entrance. A video camera was mounted on the rafters outside the residence near the entrance. There was a pay telephone inside in addition to several other telephones. There were about 11 beds or mattresses. Minute timers were found in four of the bed areas. The two $20 bills which Officer Pina had given Jackie were found under the covers in a bed in the largest bedroom in the house.

In the same bedroom the officer found utility bills addressed to defendant at the address of the residence.

At the trial the prosecution introduced a property tax bill and certified copies of deeds to prove defendant's ownership of the property.

Defendant did not testify or offer any other evidence in her own behalf at the trial.

## I, II*

. . . . . . . . . . . . . . . . . . . .

## III

Defendant brought a pretrial motion to dismiss the information for deprivation of the testimony of material witnesses by state action. (See *People* v. *Mejia* (1976) 57 Cal.App.3d 574 [129 Cal.Rptr. 192].) A hearing on this "*Mejia* motion" was combined with hearings on defendant's motions under Penal Code sections 995 and 1538.5. During the course of this hearing, the parties stipulated that approximately 10 Mexican nationals were scattered throughout the premises before any officer entered on the night of October 22, 1982, that these Mexican nationals were rounded up by the officers but were not booked, that the Border Patrol was called and the men were placed in the Border Patrol vans, with the officers expecting they would be taken across the border and so deported, and that this explains "why there were no charges brought against these nationals."

The court denied the *Mejia* motion, concluding that the Mexican nationals were not material witnesses on the charge of pimping.

*Mejia,* the leading case, held that dismissal of a criminal prosecution is mandated by due process and the constitutional right to a fair trial if state action has deprived the defendant of the opportunity to present the testimony of a person who would be a material witness on the issue of guilt or innocence. (*People* v. *Mejia, supra,* 57 Cal.App.3d at p. 580.) The actions of local law enforcement officers in delivering illegal aliens to federal immigration authorities without prior notice to the defendant and without making arrangements to prevent or delay deportation constitute state action under *Mejia.* (*Id.,* at pp. 581-582.) To determine whether the deported person would be a material witness, *Mejia* adopted the standard used in the informer disclosure cases. (*Id.,* at p. 580.)

*See footnote, *ante,* page 200.

■ The materiality test in the informer disclosure cases, which *Mejia* adopted, is whether "it appears from the evidence presented that there is a reasonable possibility the informant could give evidence on the issue of guilt which might result in a defendant's exoneration." (*People* v. *Wilks* (1978) 21 Cal.3d 460, 468 [146 Cal.Rptr. 364, 578 P.2d 1369].) The defendant need not prove that the informant's testimony would be favorable or even that the informant was an eyewitness to the crime. (*People* v. *Hunt* (1971) 4 Cal.3d 231, 239 [93 Cal.Rptr. 197, 481 P.2d 205].) Materiality depends on the "quality of the vantage point" and whether it was "sufficiently proximate" to relevant events. (*Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412, 423 [112 Cal.Rptr. 485].)

As a defendant need not show what the informer's testimony would be, but only what it might be, the test necessarily involves speculation but it is limited to reasonable rather than unreasonable possibilities. (*People* v. *Hardeman* (1982) 137 Cal.App.3d 823, 831 [187 Cal.Rptr. 296]; *People* v. *Tolliver* (1975) 53 Cal.App.3d 1036, 1048-1049 [125 Cal.Rptr. 905].)

Here defendant has given very little indication of what testimony the Mexican nationals could possibly have given which might have resulted in her exoneration. The only suggestions she has made, either in the court below or on appeal, are that one or more of the deported men might have testified (1) that sheriff's officers illegally searched for and seized the $40 in recorded funds before the search warrant was obtained, (2) that Officer Pina entered the residence in some illegal fashion, or (3) that the conversation between Officer Pina and Jackie was not as Officer Pina described it in his testimony.

The first two suggestions do not show materiality on the issue of guilt or innocence but only on issues pertaining to a motion to suppress evidence. The *Mejia* rules presuppose a showing of materiality on the issue of guilt or innocence. *Mejia* did not consider the situation in which the witness's testimony would be material only on a motion to suppress. In the informant disclosure cases, it has been expressly stated that disclosure is required only if the informant would be a material witness to guilt or innocence. (*People* v. *Kurland* (1980) 28 Cal.3d 376, 387, fn. 5 [168 Cal.Rptr. 667, 618 P.2d 213].)

Assuming a defendant deprived by state action of the testimony of a suppression motion witness would be entitled to some relief, the relief would be proportional to the severity of the deprivation. Dismissal of the action would be unwarranted and the granting of the motion to suppress would be the most the defendant could expect.

As defendant would not in any event be entitled to dismissal of the action against her, and as we are concerned here with the *Mejia* issue only as a possible bar to retrial, we need not consider further the consequences of a finding that the deported men were material witnesses on a suppression motion.[6] One further comment may prove useful, however, in the event of retrial.

■ In general, federal standards must be applied whenever suppression of evidence is invoked as a sanction in a criminal prosecution. (Cal. Const., art. I, § 28, subd. (d); *In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744]; *People v. Epps* (1986) 182 Cal.App.3d 1102, 1115 [227 Cal.Rptr. 625].) To establish materiality under the federal standard, the defendant must make a "plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." (*United States v. Valenzuela-Bernal* (1982) 458 U.S. 858, 873 [73 L.Ed.2d 1193, 1206, 102 S.Ct. 3440, 3449].) Defendant would have to meet this standard, which is much stricter than our state standard, to be entitled to any relief for deprivation of suppression motion witnesses.

■ We return to defendant's suggestion that one or more of the deported men could have contradicted Officer Pina's testimony regarding his conversation with Jackie. Defendant relies on the stipulation that the 10 men were "scattered throughout" the premises and on Officer Pina's testimony at the preliminary hearing that his conversation with Jackie took place in a partitioned area near the main reception room. Defendant maintains it is not unreasonable to speculate that one of the men could have been near the partitioned area and could have overheard something which would have impeached Officer Pina's trial testimony.

Officer Pina testified at the preliminary hearing that no one else was present when he had the conversation with Jackie in the partitioned area, that he could hear the television and conversation outside but could not distinguish what was said, and that when he entered the partitioned area the closest female was ten to fifteen feet away and the closest male two to three feet farther.

Given Officer Pina's preliminary hearing testimony, which was the only evidence on the issue, it is extremely unlikely that any of the deported men could have overheard any part of his conversation with Jackie. A finding of

---

[6]We emphasize that we are not deciding whether defendant would be entitled to *any* relief. Resolution of that issue, were it properly presented, would require us to consider, among other things, the extent to which law enforcement officers can reasonably be expected to anticipate an accused's need for suppression motion witnesses.

materiality under *Mejia* must be based on reasonable possibilities and not on sheer and unreasonable speculation. There is no reasonable possibility that any of the deported men overheard Pina's conversation with Jackie.

One final problem must be addressed. The *Mejia* motion was brought and the action was tried on the assumption that defendant's having received the $40 from the Pina-Jackie transaction constituted the crime of pimping. As stated in the previous section of this opinion, this assumption is incorrect and the Pina-Jackie transaction provided only circumstantial evidence of the commission of the charged offense. This conclusion throws rather a different light on the *Mejia* motion and in particular on the issue of materiality. As the problem has not been addressed from this new perspective by either the trial court or the parties, we are reluctant to do so at this time. It is sufficient to note here that we are not persuaded, on the present record and as a matter of law, that the deported men would be material witnesses to defendant's guilt of the charged offense even when considered from the circumstantial evidence perspective. Defendant should, however, in the event the prosecution elects to retry the case, be permitted to bring a new *Mejia* motion and to offer whatever new or additional evidence she may be able to produce.

If the deported men had seen or participated in acts of prostitution or had seen defendant receive the payment for the acts of prostitution, their testimony would have been incriminating rather than exonerating. If, on the other hand, they saw none of these things, their testimony would still not be exonerating because their lack of knowledge would not prove the events did not occur. Moreover, courts are not obliged to speculate concerning possibilities which may be contrary to facts known to a defendant. (See *People* v. *Galante* (1983) 143 Cal.App.3d 709, 711 [192 Cal.Rptr. 184].) It is up to defendant to suggest, if she can in good conscience do so, what exonerating testimony the men could possibly have given.

We conclude that defendant has failed to establish any bar to her retrial on the charged offense.

Let a writ of habeas corpus issue directing the superior court to set aside the judgment of conviction. The appeals are dismissed as moot.

Campbell, P. J., and Kaufman, J., concurred.