[No. E003938. Fourth Dist., Div. Two. Feb. 2, 1988]

THE PEOPLE, Plaintiff and Respondent, v.
RAUL BECERRIL LOPEZ, Defendant and Appellant.

[No. E004571. Fourth Dist., Div. Two. Feb. 2, 1988.]

In re RAUL LOPEZ on Habeas Corpus.

138

COUNSEL

Andrew E. Rubin, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Robert M. Foster and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CAMPBELL, P. J.—Defendant pled guilty to robbery (Pen. Code, § 211[1]) and admitted an allegation that he used a knife (§ 12022, subd. (b)) after a trial in which the jury failed to reach a verdict. The plea was given in exchange for a suspended sentence of three years for the robbery and a year for the use allegation, with the defendant to serve one year in the county jail followed by one year of formal probation. The defendant obtained a certificate of probable cause and contends the trial court wrongfully denied his *Mejia* (*People* v. *Mejia* (1976) 57 Cal.App.3d 574 [129 Cal.Rptr. 192]) motion and his request that the trial court exercise discretion under section 1385 to dismiss. Defendant also filed a petition for writ of habeas corpus based on ineffective assistance of counsel, if we should find that the *Mejia* issue cannot be heard on the appeal.

---

[1] All statutory references are to the Penal Code.

## FACTS

On October 8, 1985, the victim was driving alone on the Ortega Highway in Riverside County. Coming around a curve she saw her way was blocked by a car straddling the center divider. In the glare of the car's headlights, she noticed a man under the car, a few other men at the side of the road, and codefendant Valencia (not a party to this appeal) waving his arms at her. When she stopped short of the car blocking her way, the defendant pulled open her door, put a knife to her throat, and demanded her money and jewelry. After she gave the defendant approximately $30, another car approached and defendant ran off.

The victim drove to a volunteer fire station and reported the robbery. Firemen and sheriff's deputies detained the two defendants and five men who had been around the disabled car at the scene. The victim returned to the location with a sheriff's deputy and positively identified codefendant Valencia as the person who flagged her down and defendant as the robber. She also recognized some of the men who had been around the disabled car but said they had nothing to do with the robbery. After having been advised of his rights and waiving them, the defendant told a sheriff's deputy that he had been located 50 meters west of the disabled car attempting to slow the traffic. Defendant testified that the cars slowed and one may have stopped for a few seconds, and denied that he robbed anyone or saw a robbery take place.

Codefendant Valencia refused to talk to a sheriff's deputy, and requested an attorney. A sheriff's deputy spoke with the five uninvolved men who all said they had seen no crime.

The following day, a knife was found in another car which had been near the disabled car the night before. The victim later identified the knife as the one used by the defendant.

Without notice to the defendant, the five uninvolved men and codefendant Valencia were released to the Immigration and Naturalization Service and deported to Mexico. The defendant was also deported, but returned as did codefendant Valencia.

### DENIAL OF SECTION 1385 DISMISSAL

The case was tried and the jury deadlocked 10 to 2 for a guilty verdict. The trial court declared a mistrial, and the defendant purported to move

under section 1385[2] for dismissal on the ground that there was no likelihood that a jury would find the defendant guilty. The trial court exercised its discretion under section 1385 and denied the motion because only two jurors had found the defendant not guilty and the victim, who was "a fairly credible witness," had positively identified defendant. We reject the defendant's contention that his motion was improperly denied.

■ We recognize that section 1385 does not authorize the defendant to make a motion to dismiss in furtherance of justice. (*People* v. *Andrade* (1978) 86 Cal.App.3d 963, 973-974 [150 Cal.Rptr. 662].) However, a defendant may "ask the trial court to exercise its discretion" under section 1385 (see, e.g., *People* v. *George* (1984) 157 Cal.App.3d 1053, 1058 [204 Cal.Rptr. 329]), and we treat his motion as such a request. The trial court granted the request and considered the above factors in exercising its discretion not to dismiss. Several minutes later while urging the parties to negotiate a disposition rather than having another jury trial, the judge commented, "I think we all recognize that obviously this is going to be a hung case again." The judge made a similar comment while discussing the defendant's sentence at the change of plea hearing.

■ We first deal with the issue of whether the trial court's exercise of its discretion in not dismissing the case pursuant to section 1385 is reviewable. Defendant obtained a certificate of probable cause based on an application which, although inexactly worded, we construe to have raised the issue.[3]

Issuing the certificate of probable cause does not make the section 1385 issue appealable since the certificate is only a procedural requirement to perfect the appeal of an asserted error concerning "constitutional, jurisdictional, or other grounds going to the legality of the proceedings; . . ." (§ 1237.5, subd. (a); *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895-896 [135 Cal.Rptr. 786, 558 P.2d 872].) ■ "A guilty plea . . . concedes that the prosecution possesses *legally admissible evidence sufficient to prove defendant's guilt beyond a reasonable doubt.*" (*People* v. *Turner* (1985) 171 Cal.App.3d 116, 125 [214 Cal.Rptr. 572], italics added.)

---

[2] The relevant portion of section 1385 provides: "(a) The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."

[3] The declaration states in relevant part: "That notwithstanding the guilty plea, there are reasonable constitutional grounds going to the legality of the proceedings to be reviewed on appeal, namely: [¶] That the plea was entered into after the loss of a motion to dismiss under *Mejia and a hung jury* ; thus, defendant was denied a fair trial and due process of law." (Italics added.) Since the "hung jury" was the basis of the defendant's request to the court to exercise its discretion under section 1385, we consider the certificate of probable cause to have raised the issue.

The essence of defendant's contention that the trial court abused its discretion in failing to dismiss the case in the interests of justice because it was not likely a jury could reach a unanimous verdict is that the prosecution does not possess "legally admissible evidence sufficient to prove defendant's guilt beyond a reasonable doubt." (See *ibid.*) A plea of guilty waives the right to raise this type of question on appeal.

Furthermore, as an independent ground for our decision, the trial court's later comments concerning the likelihood of a deadlocked jury if the matter were to be tried again were made in a context completely unrelated to its decision not to dismiss the case. Therefore, these statements provide no basis for challenging the trial court's exercise of discretion. (Cf. *People* v. *Simmons* (1971) 19 Cal.App.3d 960, 964 [97 Cal.Rptr. 283] [judge's remarks made before determining defendant guilty may not be used to impeach that determination].)

### APPEALABILITY OF MEJIA MOTION

Prior to trial the defendant moved to dismiss on the ground that state action had deprived him of the testimony of the other five men in the area when the robbery occurred. The People correctly contend that this issue is not appealable after a guilty plea.

The court in *People* v. *Mejia, supra*, 57 Cal.App.3d at page 579 [129 Cal.Rptr. 192], held that if "state action has made a material witness unavailable, dismissal is mandated by due process and a defendant's constitutional right to a fair trial." In discussing the principles involved in its decision, the court quoted from *Bellizzi* v. *Superior Court* (1974) 12 Cal.3d 33, 36 [115 Cal.Rptr. 52, 524 P.2d 148]: " 'The fundamental due process principle . . . is that the prosecution may not deprive an accused of the *opportunity* [original italics] to present material evidence *which might prove his innocence* [italics supplied].' " (57 Cal.App.3d at p. 579.)

"[S]ince a plea of guilty admits every element of the offense charged, *there is no innocence to be established*. Therefore, the issues raised by appellant are not cognizable on an appeal from a judgment entered upon a guilty plea." (*People* v. *Hayton* (1979) 95 Cal.App.3d 413, 419 [156 Cal.Rptr. 426], italics added.) *Hayton* concerned the appealability of a trial court error in denying defendant's motion to dismiss based on an asserted deprivation of his right to a speedy trial and to due process. The motions in *Hayton* and this case are similar in that they both require an evaluation of the prejudice involved in the state's allegedly unconstitutional action. In considering the prejudice caused by the denial of a speedy trial, the trial court balances the effect of the delay on the defendant's ability to

establish innocence against the justification for the delay. (*People* v. *Hayton, supra,* 95 Cal.App.3d 413, 418.) ██ In considering a *Mejia* motion, the trial court must determine whether the witnesses made unavailable by state action were material. (*People* v. *Mejia, supra,* 57 Cal.App.3d at pp. 579-580.) At the heart of both determinations is the question whether the state action has affected the defendant's ability to prove his innocence.

The same kind of analysis was followed by the court in *People* v. *Halstead* (1985) 175 Cal.App.3d 772, 778-782 [221 Cal.Rptr. 71], in holding that a *Hitch* (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]) error does not survive a guilty plea. As discussed *infra,* both *Hitch* and *Mejia* concerned the state's failure to preserve evidence concerning the guilt or innocence of the defendant. Since the issue of guilt or innocence is waived by a guilty plea, both *Hitch* and *Mejia* error must be considered waived. (Accord, *People* v. *Bonwit* (1985) 173 Cal.App.3d 828, 831-833 [219 Cal.Rptr. 297]; but cf. *People* v. *Aguilar* (1985) 165 Cal.App.3d 221, 224 [211 Cal.Rptr. 333].)

Accordingly, we hold that the defendant's guilty plea bars him from raising the asserted *Mejia* error in his appeal.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts ineffective assistance of counsel in his petition for writ of habeas corpus. He argues that his attorney should have preserved the *Mejia* motion for appeal by having the case submitted to the court on the trial transcript. We deny the petition on two separate and independent grounds: (1) the asserted ineffectiveness did not deprive defendant of a potentially meritorious defense because his *Mejia* motion was correctly denied; and (2) pleading the defendant guilty in exchange for one year in the county jail and one year probation was a reasonable tactical decision by his counsel. (See *People* v. *Pope* (1979) 23 Cal.3d 412, 424-425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

1. *Mejia Motion Correctly Denied*

██ We uphold the trial court's denial of the *Mejia* motion on two separate and independent grounds. First, *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528] defines the standard of materiality applicable to a *Mejia* motion as well as a *Hitch* motion, and here the testimony of the unavailable witnesses had no apparent exculpatory value. Second, the unavailable witnesses were not material even under the more lenient *Mejia* standard because they were not "in a position to perceive what took place from a sufficiently proximate vantage point . . . ."

(*People* v. *Mejia, supra,* 57 Cal.App.3d at p. 580.) We first discuss which standard of materiality applies.

a. *Applicability of, and failure to meet, Trombetta standard of materiality*

In California prior to the passage of Proposition 8, now embodied in our Constitution as article I, section 28, and the United States Supreme Court holding in *California* v. *Trombetta, supra,* 467 U.S. 479, *Mejia* and *Hitch* established a uniform standard applicable to both unavailable witnesses and lost or destroyed physical evidence.

*Mejia* held that an unavailable witness is material if there is "a reasonable possibility [the witness] could, if available, give evidence which would exonerate [the defendant]," that such a reasonable possibility existed when the witness "either participated in the crime charged, or was a nonparticipating eyewitness to the offense, in a position to perceive what took place from a sufficiently proximate vantage point," and that "[n]o showing that their potential testimony would exonerate [the defendant] was required." (57 Cal.App.3d at pp. 580, 581.)

Similarly, the California Supreme Court in *Hitch* held that unavailable demonstrative evidence is material if "there is a reasonable possibility that [the evidence] would constitute favorable evidence on the issue of guilt or innocence" (12 Cal.3d at p. 649), and impliedly held that " '[t]he defendant need not prove that the [witness] would give testimony favorable to the defense' " (at p. 648).

While the language differs slightly, these two cases set the same standard of materiality for both testimonial and demonstrative evidence. *Hitch* expressly rejected any distinction between testimony and demonstrative evidence since the latter also requires testimony for its presentation. (12 Cal.3d at p. 649.) The court in *People* v. *Cordova* (1983) 148 Cal.App.3d 177, 183-184 [195 Cal.Rptr. 758], in which the court did not deal with the effect of Proposition 8 (see p. 183, fn. 1), emphasized the importance of having the same standard of materiality applicable to both testimonial and demonstrative evidence in rejecting a more stringent federal standard of materiality set forth in *United States* v. *Valenzuela-Bernal* (1982) 458 U.S. 858, 873-874, [73 L.Ed.2d 1193, 1206-1207, 102 S.Ct. 3440], discussed *infra.*

Cases dealing with the effect of article I, section 28, subdivision (d), (hereinafter subdivision (d))[4] in the *Hitch* context have with near unanimity construed it to require the application of the higher standard of materiality set forth in *Trombetta* (467 U.S. at p. 489 [81 L.Ed.2d at p. 422]). (See *People* v. *Epps* (1986) 182 Cal.App.3d 1102, 1112-1117 [227 Cal.Rptr. 625], and cases discussed therein.)

■ Since the evaluation of the materiality of demonstrative evidence does not significantly differ from the evaluation of the materiality of testimony, and since the same materiality standard has traditionally been applied to both types of evidence, consistency requires that subdivision (d) be construed to require the use of the federal standard of materiality in *Mejia* as well as *Hitch* situations.[5]

Clarification of the precise federal standard of materiality applicable in *Mejia* cases is needed. The most recent United States Supreme Court case dealing with lost witnesses, *United States* v. *Valenzuela-Bernal, supra,* 458 U.S. 858, preceded *Trombetta* and held at page 873 [73 L.Ed.2d at p. 1206]: "Sanctions may be imposed on the Government for deporting witnesses only if the criminal defendant makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." This differs somewhat from the standard of materiality set forth in *Trombetta* which required the evidence to "possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (467 U.S. at p. 489 [81 L.Ed.2d at p. 422].) The primary difference is *Trombetta's* requirement that the exculpatory nature be apparent prior to the loss of the evidence.

However, the United States Supreme Court in *Valenzuela-Bernal* did not intend to state a different standard of materiality from that required in other

---

[4] The pertinent part of subdivision (d) states: ". . . relevant evidence shall not be excluded in any criminal proceeding . . . ."

[5] No California appellate court cases deal directly with this issue. In *People* v. *Bryant* (1984) 157 Cal.App.3d 582, 593, 594 [203 Cal.Rptr. 733], the Fifth District Court of Appeal, reaffirmed its holding in *Cordova, supra,* without discussion of the applicability of subdivision (d) or *Trombetta.* Another case, *People* v. *Warren* (1984) 161 Cal.App.3d 961, 975 [207 Cal.Rptr. 912], agrees with the holdings of the Fifth District in *Cordova* and *Bryant,* again without discussion of the effect of Proposition 8 or *Trombetta.* In *People* v. *Jenkins* (1987) 190 Cal. App.3d 200, at page 206 [235 Cal.Rptr. 268], we held that, if a defendant were entitled to any relief at all when the lost testimony concerned the legality of a search rather than guilt or innocence, a defendant would have to meet the federal standard applicable to lost witness cases because "federal standards must be applied whenever suppression of evidence is invoked as a sanction in a criminal prosecution." Because *Jenkins* ultimately was a Fourth Amendment suppression case, we did not squarely face the applicability of subdivision (d) in the *Mejia* context. Nevertheless, *Jenkins* presages our holding here.

cases concerning the loss of material evidence: "*As in other cases concerning the loss of material evidence,* sanctions will be warranted for deportation of alien witnesses only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." (458 U.S. at pp. 873-874 [73 L.Ed.2d at pp. 1206-1207], italics added.)

From the breadth of the discussion in *Trombetta,* which included mention of *Valenzuela-Bernal* (467 U.S. at pp. 485, 486 [81 L.Ed.2d at pp. 417, 420-421]), we conclude that the United States Supreme Court intended to state in *Trombetta* a more definitive and precise formulation of the constitutional standard of materiality in all loss of evidence cases. We hold that *Trombetta* states the standard of materiality applicable in both *Mejia* and *Hitch* contexts.

Defendant contends that subdivision (d) and *Trombetta* should not be held to apply to the deportation of witnesses because testimonial evidence differs from physical evidence, subdivision (d) pertains only to the exclusion of evidence and not the dismissal of a case, and *Mejia* was based on independent state grounds. Defendant relies on *Cordova* as authority for his contentions, but *Cordova* cannot be considered persuasive on this issue because it expressly declined to deal with the application of subdivision (d). (148 Cal.App.3d at p. 183, fn. 1.)

In asserting a distinction between physical evidence and testimonial evidence, defendant argues, "Although some physical evidence may be subject to two interpretations, the test done on physical evidence, if done properly, should bring about identical results. Whereas with witnesses the lode of information which they hold may be tapped more successfully by the competent miner than by the one whose tools are inadequate for the job."

We disagree. The materiality of a lost body fluid sample is just as problematical as the testimony of an unavailable witness. While physical evidence may be simpler to present than testimony which must be elicited by a skilled attorney, defendant does not explain, and we fail to see, how that distinction makes it more difficult for a defendant to establish the materiality of lost witnesses than the materiality of lost physical or demonstrative evidence. Without such a difference in difficulty, no difference in the standard is desirable.

The asserted distinction between dismissal and exclusion is artificial because dismissal is nothing more than the exclusion of all evidence against a defendant. The distinction was rejected in *People* v. *Epps, supra,* 182 Cal.App.3d at page 1115: "Although not squarely addressed by the parties in this litigation, the trial court was not asked to *exclude* evidence as a

remedy and therefore [subdivision (d)] may not apply to this case at all. . . . In the case before this court, appellant wanted *more* evidence to be available. . . . [¶] By this analysis it can be argued that [subdivision (d)] does not address this area of constitutionally guaranteed access to evidence except in those cases where the court, in fashioning a remedy, considers exclusion of evidence. Here the court was never faced with a request to exclude evidence but was asked to dismiss the case or, in the alternative, to dismiss all specific intent crimes. As previously discussed, the 'trigger' to [subdivision (d)] occurs when exclusion of evidence is considered as a remedy. We find that, in cases such as this, where the evidence allegedly lost or destroyed is potentially exculpatory, and the usual remedy is exclusion of evidence potentially inculpatory, the functional remedial equivalent of exclusion of evidence is dismissal or dismissal of specific intent crimes."

Finally, since dismissals on *Mejia* grounds are equivalent to the exclusion of evidence, and since the undisputed import of subdivision (d) is to prevent the exclusion of evidence on independent state grounds, it follows that independent state grounds no longer justify the rejection of the federal standard of materiality in *Mejia* cases. (See *People* v. *Epps, supra,* 182 Cal.App.3d at p. 1114 [whether *Hitch* was based on federal or state law may not need to be decided since Proposition 8 seems to compel application of federal law].)

 Having held that the *Trombetta* standard of materiality applies, we hold that the exculpatory value of the witnesses in this case was not apparent at the time of their deportation for the same reasons they did not satisfy the more lenient *Mejia* standard of materiality as discussed in the following paragraph.

b. *Failure to meet Mejia standard*

The second reason for upholding the trial court's denial of the *Mejia* motion is that the unavailable witnesses did not meet the *Mejia* test of materiality. *Mejia* required that a nonparticipating eyewitness be "in a position to perceive what took place from a sufficiently proximate vantage point . . . ." (57 Cal.App.3d at p. 580.) Defendant himself testified that he was 50 meters away from the five unavailable witnesses at 9 o'clock at night when their primary focus was not him but the car in the center divider. The trial court astutely based its denial of the *Mejia* motion on these facts.

2. *Tactical Decision*

 The second separate and independent ground for denying the defendant's petition for writ of habeas corpus based on ineffective assistance of

counsel is that defense counsel's tactical decision to have defendant plead guilty was reasonable even if the rejected *Mejia* motion had a chance on appeal.

At the time the defendant agreed to the plea bargain, with 156 days of time served and pretrial credits he would have only had 84 days to serve in county jail prior to his release. Immediately upon his release, he would be deported because of a hold placed on him by the Immigration and Naturalization Service. The terms of probation provided that he need not report after he was deported, could not reenter the country illegally, and if he entered the country legally, would then be required to report any time within one year after his release from county jail.

Trial counsel believed that the *Mejia* issue would be preserved on appeal and obtained the certificate of probable cause for defendant. Defendant now contends that his trial counsel should have been aware that a *Mejia* issue might not survive a guilty plea, and should have entered into a stipulation with the prosecution to have the matter submitted on the trial transcript, thereby preserving the *Mejia* issue.

The defendant has failed to meet his burden of proving that his attorney's advice to plead guilty "would not be made by diligent, ordinarily prudent lawyers in criminal cases." (*People* v. *Pope, supra,* 23 Cal.3d 412, 424, 425.) A stipulated submission on the trial transcript was probably not a viable option simply because the prosecution would not likely have stipulated to submitting on the transcript of a trial that resulted in a deadlocked jury. Submission on the transcript ran the risk of a prison sentence just to preserve an uncertain issue for appeal. Even with the knowledge that a *Mejia* issue might not survive a guilty plea, a competent attorney concerned with defendant's best interests would not have traded a certain release within three months for a chance of reversal on appeal.

The judgment is affirmed and the writ is denied.

McDaniel, J., and Hews, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 26, 1988.