[No. B040852. Second Dist., Div. Seven. Feb. 19, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
LEON HENRY McNABB, Defendant and Appellant.

## COUNSEL

Paul Anthony Stabile, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Donald E. De Nicola and Lauren E. Dana, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, P. J.**—After denial of portions of defendant's motion to quash and traverse the search warrant and suppress evidence (Pen. Code, § 1538.5), defendant withdrew his plea of not guilty and pleaded guilty to one count of manufacturing methamphetamine (Health & Saf. Code, § 11379.6, subd. (a)), and admitted to be true the allegation that the substance containing methamphetamine exceeded three pounds by weight (Health & Saf. Code, § 11379.8). Pursuant to a plea bargain, he was sentenced to state prison for a total term of twelve years, consisting of the high term of seven years plus a consecutive five years for the enhancement. The court dismissed count 2 (possession for sale of methamphetamine, Health & Saf. Code, § 11378), count 3 (conspiracy to manufacture methamphetamine) and count 4 (conspiracy to possess methamphetamine for sale).

On appeal from the judgment, defendant contends (1) the trial court erred in denying his motion to quash the search warrant, (2) the police seized and destroyed evidence vital to his affirmative defense, (3) at the time of the preliminary hearing, the court erred in refusing to admit into evidence his written contract with the police to act as a police informant, and (4) the court at sentence abused its discretion in failing to order a Penal Code section 1203.03 diagnostic study.

I

### MOTION TO QUASH, TRAVERSE AND SUPPRESS EVIDENCE

Appellant contends his motion to quash the search warrant was erroneously denied in three respects: the affidavit supporting the search warrant lacked probable cause to search his vehicle; the affidavit lacked the required specificity in its description of the vehicle to be searched; and the search warrant for the premises at 2128 West 242nd Street in Lomita authorized a search of the residence but not the detached garage behind the residence.

A. *Facts.*

Pursuant to a telephonically authorized search warrant (Pen. Code, § 1528, subd. (b)) executed at about 12:05 a.m. on March 9, 1988, police

seized numerous glass beakers and flasks with liquids containing methamphetamine from a detached garage at 2128 West 242nd Street in the City of Lomita; from a briefcase inside the residence at that address, plastic bags containing methamphetamine; and from defendant's car, a total of about two and a half pounds of a substance containing methamphetamine.

About 9:20 p.m. on March 8, Detective Wunderlich telephoned the magistrate and testified that he had been a police officer for the last 17 years, 13 of which had been spent investigating major narcotics violations; he had been involved in investigating over 200 clandestine laboratories; at about 4 p.m. on March 8, he and follow officers were conducting a narcotics investigation at a retail/wholesale chemical outlet that sells chemical equipment; he observed a man about 35 years old, later identified as defendant, arrive at the store driving a gold Cadillac with no license plates; defendant entered and came out of the store 10 minutes later carrying a dark green 5-gallon can with a red flammable sticker on it; 2 male employees carried out to the Cadillac another 5-gallon can with a red flammable sticker and 2 boxes for chemicals and equipment; the items were loaded behind the driver's seat, and defendant covered them with a blanket.

The police followed defendant in the Cadillac to 2128 West 242nd Street in the City of Lomita; at about 4:50 p.m., the Cadillac parked in the driveway of the residence; defendant was accompanied by 2 other men, approximately ages 60 and 55, whom Wunderlich referred to as suspects numbers 2 and 3; suspect 2 unlocked the garage door and all 3 men took the items from the car into the garage; suspect 2 relocked the garage; the men then went into the rear yard area; Detective Wunderlich went to the rear of the location and saw that the garage had a pedestrian door facing into the yard area; on the south wall of the structure was a vent fan; Wunderlich detected an ether odor in the air coming from the rear of the garage.

About 5:10 p.m., Wunderlich saw suspect 3 leave the residence and watch all pedestrian traffic while suspect 2 went to a red Chrysler which, although there was available parking directly in front of the house, was parked in a public lot 100 yards west; suspect 2 removed from the car's trunk a large green trash bag and a black travel bag, both containing heavy items, and brought them to the rear of the premises; the conduct of suspect 3 was consistent with countersurveillance to make sure the police were not watching; a check of Department of Motor Vehicle records disclosed that the red Chrysler was a rental vehicle; a further check showed the car was rented to Arthur Carr; a check of his narcotics file revealed that Carr fit the description of suspect 2 and was associated with a major distributor of heroin.

About 6:35 p.m., two men arrived in a white compact car; a fellow officer, Detective Johnson, saw them carry a black plastic five-gallon container and a large cardboard cylinder container from the car into the garage; Detective Johnson had seen similar plastic containers containing the chemical hydriodic acid and had recovered similar cardboard cylinders containing dry chemicals such as sodium hydroxide and ephedrine; these chemicals are used in the manufacture of methamphetamine by the process known as the red phosphorous method; Detective Johnson also detected the odor of ether and saw the vent fan operating.

About 6:45 p.m., Detective Wunderlich was informed by Southern California Edison Company that as of mid-December, a new owner had taken possession of the premises and power usage from December to February was one-third greater than normal; it was Wunderlich's experience that the heating apparatus used to manufacture drugs needs 200 to 400 kilowatt hours of power.

It was Wunderlich's opinion that people at the premises were manufacturing methamphetamine; they transported the chemicals and equipment to the location in three separate vehicles to avoid detection and to avoid being caught with certain chemicals together; the additional kilowatt hours being used were in line with the amount of electricity needed to operate a heating mantle; the location would be ideal for such manufacturing as it consists of one-third of an acre with a vacant lot on the west side and the closest other residence about one hundred yards away; it is surrounded by a six-foot-high block wall; it has been his experience that people who operate such labs do so during the late evening and early morning hours to avoid detection due to the chemical odors of manufacturing; the use of ether could cause fire and explosion and the people operating such labs do not take proper precautions to avoid these dangers. Wunderlich further stated that because of the dangers involved, it would be safer for him and fellow officers to wait until the suspects left the premises in order to secure it.

At 9:42 p.m., the magistrate, finding probable cause, authorized issuance of the search warrant and an endorsement for nighttime service of "The premises located at 2128 W. 242nd Street, City of Lomita, County of Los Angeles, further described as a single family residence with white wood exterior, white wood trim and green composition roof. There is a detached garage located to the rear (south) of the residence. The numbers 2128 are painted on the curb adjacent to the driveway leading into the location. The location is on the south side of the street with the front door facing north. [¶] Also the following vehicles; . . . Cadillac, gold in color with a black landau top with no license plates."

About 12:05 a.m. on March 9, police stopped the Cadillac, being driven by defendant, about a block from 2128 West 242nd Street and recovered from the passenger compartment about half a pound of a substance containing methamphetamine; recovered from the car's trunk about 10 days later were an additional 2 pounds of methamphetamine.

B. *Discussion.*

■ The standard by which a magistrate must determine whether an affidavit is sufficient to establish probable cause for issuance of a search warrant is explained in *Illinois* v. *Gates* (1983) 462 U.S. 213, 238-239 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317]: "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."

■ We find to be without merit appellant's contention that because the affiant stated that the chemicals were *unloaded* from the Cadillac, there are no facts to indicate that at the time of the execution of the warrant there would be inside the car any evidence or contraband. Without citing authority, appellant essentially asserts that the affiant is required to make a prima facie showing that evidence or contraband would be found in the car.

■ However, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. While an effort to fix some general, numerically precise degree of certainty corresponding to probable cause may not be helpful, it is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." (*People* v. *Rochen* (1988) 203 Cal.App.3d 684, 688 [250 Cal.Rptr. 73], internal quotation marks omitted.)

"The process [of determining probable cause] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." (*People*

v. *Love* (1985) 168 Cal.App.3d 104, 109 [214 Cal.Rptr. 483], internal quotation marks omitted.)

 Applying the proper standard of probable cause, we conclude that there was a substantial basis for the issuing magistrate's finding that there was probable cause to believe that methamphetamine or evidence of its manufacture would be found in the Cadillac. The magistrate reasonably could have concluded that because the Cadillac was used to transport equipment and chemicals to the clandestine lab, it was probable that the Cadillac would be used to transport the manufactured drugs to the point of distribution. Moreover, it was reasonably probable that the Cadillac might contain receipts for equipment and chemicals or other evidence relating to the clandestine lab or to the identity of the people operating it.

 Also without merit is appellant's contention that the affidavit supporting the search warrant lacked particularity in its description of the vehicle to be searched. It is clear from the affidavit supporting the search warrant that the gold Cadillac with a black landau top and no license plates, as described in the warrant, referred to one vehicle and one vehicle only. The affidavit provided a description of the whereabouts of one particular Cadillac and its driver under surveillance beginning at 4 p.m. that day. As the affidavit described and referred only to this one particular Cadillac parked in the driveway of the clandestine lab at 2128 West 242nd Street, the search warrant clearly authorized the search of only this one Cadillac. We conclude that the affidavit provided a sufficiently detailed description of the particular Cadillac to be searched.

 The contention that the language of the search warrant authorized a search of the residence, but not the detached garage, is likewise without substance. Appellant maintains that the reference to the detached garage was added only to further describe the residence itself. As the search warrant included the street address of the premises, the premises were adequately identified and the reference to the detached garage was not necessary for purposes of identification. Accordingly, the specific reference to the detached garage was not to further describe the residence, but to include a description of an important part of the premises to be searched. The word "premises" in a search warrant describing a "house . . . with a detached garage" has been held to embrace both the house and the garage. (*People* v. *Mack* (1977) 66 Cal.App.3d 839, 859 [136 Cal.Rptr. 283].) Similarly, the word premises in the instant search warrant embraces both the residence and the detached garage. We conclude the trial court properly denied the motion to quash.

## II

### Destruction of Evidence and Evidentiary Ruling as to Contract with Police

Appellant contends that his affirmative defense that he was working as an informant for the police was undermined because the police lost or destroyed a portable telephone which had been confiscated at the time of his arrest. The telephone contained a memory and redial feature which, according to appellant, would have shown that before his arrest he had dialed the police department to inform them of his activities. Although the court did impose a sanction that the People could not argue that the memory of the telephone did not contain the police department number, appellant characterizes the sanction as "mild" and claims that his defense was still weakened because he was left with only his word, rather than the telephone evidence, to establish his defense.

In a separate but related argument, appellant claims that at the time of the preliminary hearing the court erroneously refused to admit into evidence the written contract of his role as a police informant.[1]

■ "Other than search and seizure issues specifically reviewable under [Penal Code] section 1538.5, subdivision (m), all errors arising prior to entry of plea of guilty or nolo contendere are waived by the plea, except those based on 'reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; . . .' " (*People* v. *Shults* (1984) 151 Cal.App.3d 714, 718-719 [199 Cal.Rptr. 33].) In the absence of any challenge to the legality of his plea, either in the trial court or in this court, appellant's contentions pertaining to his affirmative defense are not cognizable on appeal.

" '[A] plea of guilty waives any right to raise questions regarding the evidence, including its sufficiency or admissibility, and this is true whether or not the subsequent claim of evidentiary error is founded on constitutional violations.' " (*People* v. *Halstead* (1985) 175 Cal.App.3d 772, 778 [221 Cal.Rptr. 71].)

"Since the issue of guilt or innocence is waived by a guilty plea, both *Hitch* [*People* v. *Hitch* (1974) 12 Cal.3d 641 (117 Cal.Rptr. 9, 527 P.2d 361)] and *Mejia* [*People* v. *Mejia* (1976) 57 Cal.App.3d 574 (129 Cal.Rptr.

---

[1] The court found the document, signed April 9, 1987, irrelevant to the instant case: "This document clearly states it must involve cocaine and clearly states that all investigations must be completed within six months of the signed date of the document. It just doesn't appear to this court relevant for what occurred in this case."

192)] error must be considered waived." (*People* v. *Lopez* (1988) 198 Cal.App.3d 135, 142 [243 Cal.Rptr. 590].) "A guilty plea is more than an admission of guilt; it is also a waiver of affirmative defenses." (*People* v. *Bonwit* (1985) 173 Cal.App.3d 828, 832 [219 Cal.Rptr. 297].) A *Hitch* motion seeking sanctions for the destruction of evidence relating to an affirmative defense is also waived by a guilty plea. (*Ibid.*)

As in *Bonwit,* where the defendant's guilty plea to a charge of selling cocaine implied an admission that he was not entrapped and thus foreclosed his claim on appeal that he was unable to prove entrapment because of the destruction of evidence (173 Cal.App.3d at p. 832), appellant's guilty plea implied an admission that at the time of the offenses herein he was not working as a police informant. Accordingly, appellant's claims that his affirmative defense was undermined by the loss or destruction of evidence and a purported erroneous evidentiary ruling are foreclosed.

Appellant presents no pertinent authority to support his argument that the existence of "exceptional circumstances" permits appellate review of the foregoing two issues.

## III

### DIAGNOSTIC STUDY

Appellant fails to show any abuse of discretion in the trial court's denial of his request, at time of sentence, for a diagnostic study under Penal Code section 1203.03. At the time of sentence, defense counsel informed the court that the defendant, on his own initiative, contacted an organization dealing with narcotic addiction and was told he was suitable for their program; counsel requested that the court consider a diagnostic study. After the prosecution expressed opposition, the court proceeded to sentence the defendant pursuant to the plea bargain, thus impliedly denying the request for a diagnostic study.

No abuse of discretion in denying a diagnostic study is shown on the instant record on appeal, which contains no competent evidence of appellant's narcotic addiction. Even had our record contained such evidence, no abuse of discretion is shown in light of the facts that appellant was sentenced pursuant to a plea bargain agreement and the crime of which he was convicted related to the manufacture of methamphetamine, not his use of the substance.

## DISPOSITION

The judgment is affirmed.

Johnson, J., and Woods (Fred), J., concurred.