[No. C020731. Third Dist. July 10, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
ERIC SEAN ROBINSON, Defendant and Appellant.

## Counsel

Michael A. Willemsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edmund D. McMurray and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SPARKS, J.**—In this case we consider whether the denial of defendant's motion to represent himself under *Faretta* v. *California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562], is reviewable on appeal after a plea of no contest. We hold that it is.

Defendant entered pleas of no contest to charges of possession of methamphetamine for sale (Health & Saf. Code, § 11378), perjury (Pen. Code, § 118), vehicular manslaughter (Pen. Code, § 192, subd. (c)(3)), and assault with a firearm (Pen. Code, § 245, subd. (a)(2)). Defendant also admitted various enhancements (Pen. Code, §§ 12022, subd. (c), 12022.1, subd. (b); Health & Saf. Code, § 11370.2, subd. (a)) and the trial court sentenced him to an aggregate unstayed prison term of 14 years.

On appeal, defendant contends the trial court erred in denying his *Faretta* motion for self-representation and in denying his motion to withdraw his plea. Defendant's first contention has merit and is dispositive of his appeal. We shall therefore reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts surrounding defendant's offenses are irrelevant to the issues raised on appeal. We instead focus our attention on the proceedings involving defendant's request for self-representation.

Defendant's case was set for trial on September 12, 1994. On August 9, James Carroll, the appointed attorney who had represented defendant at the preliminary hearing, asked to be relieved because of trial schedule conflicts. After Carroll was relieved, Frances Huey was assigned from the attorney panel to handle defendant's case. Huey informed the court that defendant had asked to represent himself. Defendant clarified that he would like a different attorney, a Mr. Masuda, appointed to his case because Huey had already told him that she would be unable to go to trial on September 12.

The court advised that while defendant was entitled to an attorney he was not entitled to specify which attorney should be appointed. Defendant then said he would accept the attorney appointed by the court.

Huey explained that she could not go to trial on September 12 and that defendant refused to waive time. The court noted that it had tried to get an attorney who could take the September 12 court date but was unable to find a panel attorney who could do so. The court reiterated that Huey would be appointed to represent defendant and began to indicate that it would find good cause for postponing the trial date. Defendant then stated that he would prefer to represent himself and keep the original trial date.

The court advised defendant that he was entitled to have appointed counsel, a right defendant said he understood. The court asked if defendant understood that it was "generally not a wise choice to represent yourself in a criminal matter," and defendant responded affirmatively. Defendant also said he understood that if found guilty, a sentence of 27 years 4 months might be imposed.

The court further advised, and defendant acknowledged, that defendant would be opposed by a trained prosecutor, would be required to comply with all the rules of criminal procedure and evidence, could not base an appeal on his own lack of competence, and would not be entitled to a delay in proceedings if he subsequently changed his mind and wanted to hire an attorney.

The court then inquired into defendant's background. Defendant said his only legal experience was in his own "previous cases." He said he thought he had represented himself 11 years earlier when he was 18 years old, on a burglary charge and successfully got the case reduced to misdemeanor trespassing, for which probation was ordered. Defendant said he had completed the 11th grade and had attended other classes at the Rio Cosumnes Correctional Center, but had not received any degrees or a general equivalency diploma.

In response to the court's question, defendant stated he had held "various kinds" of employment, primarily manual labor, and had most recently worked as a ranch hand.

The district attorney noted that he was trying to work out a resolution to this case, but concluded, "[defendant's] got a right to represent himself if he wants to do that on a 27-year exposure. I don't know what else we can say."

The court then said to defendant: ". . . I have to make a determination that you have knowingly, intelligently and voluntarily decided to represent yourself. While I find that you have now made a request to represent yourself, I do not find that you have intelligently made a request to represent

yourself. [¶] I also find that you voluntarily made a request to represent yourself, but based on your background, your 11th grade education, your absence of any work experience and/or educational experience beyond the 11th grade that result in any type of formal degree, I do not believe that you are—you could effectively represent yourself in these very serious cases."

Defendant interrupted to point out that there was a law library available in the jail, that he was "a determined individual," and that he believed he "could handle [him]self."

The court concluded: "It's my determination to make, . . . and I find I cannot determine that you have intelligently decided to represent yourself. I'm denying your pro[.] per[.] status request and appointing Ms. Huey to all three cases."

The court found good cause to postpone trial to September 28, 12 days beyond the 60-day limit. Defendant subsequently entered a negotiated plea of no contest to various offenses and received an aggregate unstayed prison term of 14 years.

Defendant received a certificate of probable cause and this appeal followed.

DISCUSSION

### I. *Raising Faretta Issue After Plea of No Contest*

▮ At the court's request, the parties filed supplemental briefs addressing whether defendant's plea of no contest waived any error related to the denial of his *Faretta* motion. We conclude this issue is not waived by his plea and thus may properly be raised on appeal.

A plea of no contest has the same legal effect as a guilty plea. (Pen. Code, § 1016, subd. 3. [all subsequent statutory references are to the Penal Code unless otherwise indicated].) After a plea of guilty or its functional equivalent of no contest (nolo contendere), the appellate rights of the defendant are statutorily restricted. Under section 1237.5, no appeal can be taken by a defendant from a judgment of conviction after a plea of guilty or no contest except where defendant has filed a written statement asserting enumerated grounds "going to the legality of the proceedings" and the court has filed a certificate of probable cause. (See also Cal. Rules of Court, rule 31(d).) But a defendant who receives a certificate of probable cause after a guilty or no contest plea does not have carte blanche to raise any and all issues on appeal.

Rather, section 1237.5, subdivision (a), limits these appeals to those that raise "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings." (See also *People* v. *Hobbs* (1994) 7 Cal.4th 948, 955 [30 Cal.Rptr.2d 651, 873 P.2d 1246].)

In *People* v. *Turner* (1985) 171 Cal.App.3d 116 [214 Cal.Rptr. 572], we discussed at length the types of issues that survive a guilty plea and those that are waived by virtue of the plea. For example, we noted: "A guilty plea . . . concedes that the prosecution possesses legally admissible evidence sufficient to prove defendant's guilt beyond a reasonable doubt. Accordingly, a plea of guilty waives any right to raise questions regarding the evidence, including its sufficiency or admissibility, and this is true whether or not the subsequent claim of evidentiary error is founded on constitutional violations." (*Id.* at p. 125.)

We further explained: "A guilty plea also waives any irregularity in the proceedings which would not preclude a conviction. [Citation.] Thus irregularities which could be cured, or which would not preclude subsequent proceedings to establish guilt, are waived and may not be asserted on appeal after a guilty plea. [Citation.] In other words, by pleading guilty the defendant admits that he did that which he is accused of doing and he thereby obviates the procedural necessity of establishing that he committed the crime charged. In short, a guilty plea 'admits all matters essential to the conviction.' [Citation.] A defendant thereafter can raise only those questions which go to the power of the state to try him despite his guilt. In other words, in the language of the statute, defendant can only raise 'grounds going to the legality of the proceedings.' " (171 Cal.App.3d at p. 126; see also *People* v. *Jones* (1995) 10 Cal.4th 1102, 1109 [43 Cal.Rptr.2d 464, 898 P.2d 910].)

After enumerating some of the issues waived by a guilty plea, we turned to those that survive a guilty plea and that may be raised on appeal with a certificate of probable cause. We noted: "Since a factually guilty defendant is entitled to benefit of counsel, the denial of the right to counsel . . . is not waived by a plea of guilty." (171 Cal.App.3d at p. 127; see also *People* v. *Holland* (1978) 23 Cal.3d 77, 85 [151 Cal.Rptr. 625, 588 P.2d 765].)[1]

The right to self-representation is grounded in the Sixth Amendment's right to counsel. (*Faretta* v. *California, supra,* 422 U.S. at p. 819 [95 S.Ct. at p. 2533, 45 L.Ed.2d at p. 572].) As the United States Supreme Court held: "The Sixth Amendment does not provide merely that a defense shall be

---

[1]Similarly, a claim of ineffective assistance of counsel may be raised following a guilty plea (*People* v. *Everett* (1986) 186 Cal.App.3d 274, 279 [230 Cal.Rptr. 604]).

made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." (*Id.* at pp. 819-820 [95 S.Ct. at p. 2533, 45 L.Ed.2d at pp. 572-573], fn. omitted.)

In dicta in *People* v. *Barlow* (1980) 103 Cal.App.3d 351 [163 Cal.Rptr. 664], the Court of Appeal suggested that, had defendant obtained a certificate of probable cause following his guilty plea, he would have been able to raise a *Faretta* issue on appeal. (*Id.* at p. 363.) That suggestion was proper. ▮▮▮ Just as other issues relating to aspects of the right to counsel survive a guilty plea, a claimed *Faretta* violation may also properly be raised in an appeal from a guilty plea or plea of no contest. Compliance with *Faretta* is an issue unrelated to defendant's guilt, and constitutes grounds going to the legality of the proceedings.

Having obtained a certificate of probable cause, defendant is therefore entitled to raise his *Faretta* claim in this appeal.[2]

---

[2]In arguing otherwise, the Attorney General contends the claimed *Faretta* error played no part in defendant's decision to enter a plea of no contest, and therefore cannot be raised on appeal. The Attorney General misconstrues the import of the cited cases. For example, citing *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 9 [136 Cal.Rptr. 409, 559 P.2d 1028], the Attorney General contends: "All errors arising prior to the entry of a guilty plea are waived by a no contest plea." However, *Kaanehe* specifically states that ". . . all error arising prior to the entry of a guilty plea are waived, *except those which question the jurisdiction or legality of the proceedings resulting in the plea.*" (19 Cal.3d at p. 9, italics added.) Contrary to the People's apparent belief, the claimed error need not have occurred at the actual hearing in which the plea was taken. It is sufficient if the error occurred in a preplea proceeding. (E.g., *People* v. *Holland, supra,* 23 Cal.3d at pp. 81-82, 85-89; see also *People* v. *Hoffard* (1995) 10 Cal.4th 1170, 1173 [43 Cal.Rptr.2d 827, 899 P.2d 896] [noting certificate of probable cause is required to appeal "on grounds going to the validity of the plea *or the preplea proceedings*" (italics added)].) Error occurring after the entry of a plea, such as *Marsden* error (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]) at a sentencing hearing, is clearly unrelated to the plea itself and does not justify setting the plea aside. (E.g., *People* v. *Gonzalez* (1993) 13 Cal.App.4th 707, 716 [16 Cal.Rptr.2d 635].) Here, defendant was denied the right to self-representation before his plea was entered. That error, implicating the right to counsel, permeated all subsequent proceedings and may properly be raised in this appeal.

The People also suggest that *Barlow* is distinguishable from the instant case because it involved "pseudo-*Faretta* error" instead of "true *Faretta*" error. Because this claimed distinction is chimerical, we reject it.

## II. *Denial of Faretta Motion*

Defendant contends the court erred in denying his motion for self-representation. We agree.

As this court has explained: "In *Faretta*, the United States Supreme Court held that a defendant in a state criminal prosecution has a constitutional right under the Sixth and Fourteenth Amendments to waive counsel and represent himself. [Citation.] Once defendant asserts this right, the court must determine whether he has the mental capacity to make a voluntary and intelligent waiver of the right to counsel. [Citation.] In making this determination, '[t]he trial court is not concerned with the wisdom of defendant's decision to represent himself, or with how well he can do so. The sole relevant question is whether the defendant has the mental capacity to knowingly waive counsel while realizing the probable risks and consequences of self representation. . . .'" (*People* v. *Nauton* (1994) 29 Cal.App.4th 976, 979 [34 Cal.Rptr.2d 861], quoting *People* v. *Clark* (1992) 3 Cal.4th 41, 107 [10 Cal.Rptr.2d 554, 833 P.2d 561].)

A court cannot consider defendant's ability to represent himself. The United States Supreme Court held: "[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." (*Godinez* v. *Moran* (1993) 509 U.S. 389, 399 [113 S.Ct. 2680, 2687, 125 L.Ed.2d 321, 332], italics omitted.)

A defendant's competence to waive counsel is a matter left to the sound discretion of the trial court and its decision will not be disturbed absent a manifest abuse of discretion. (*People* v. *McArthur* (1992) 11 Cal.App.4th 619, 627 [14 Cal.Rptr.2d 203].)

Here, the record demonstrates an abuse of discretion. The trial court advised defendant of the problems inherent in self-representation, and defendant clearly stated he understood them. The court's decision to deny defendant's right to self-representation was predicated on the court's assessment of defendant's skills and background and its conclusion that defendant could not "effectively represent [himself] in these very serious cases."

The court appears to have confused the intelligence of defendant's waiver with the intelligence of the choice itself. Defendant had an 11th grade education and had taken classes beyond that level. He had worked as a manual laborer, and had previous experience in the criminal justice system. Defendant clearly understood his right to counsel and what was involved in self-representation.

A defendant need not have a certain educational level or particular work experience in order to invoke the right to self-representation. Nor is the severity of the charges an issue in determining whether self-representation is proper. For example, in *People* v. *Teron* (1979) 23 Cal.3d 103 [151 Cal.Rptr. 633, 588 P.2d 773], defendant faced a charge of first degree murder for which the death penalty might be imposed. Defendant was described as "literate, aware of his legal rights, and experienced in criminal proceedings . . . ." (*Id.* at p. 113.) The Supreme Court found the trial court properly determined that defendant intelligently waived his right to counsel. (*Id.* at pp. 112-115.)

In *Johnstone* v. *Kelly* (2d Cir. 1986) 808 F.2d 214, the trial court denied defendant's motion for self-representation, finding defendant was "eighteen [years old], he has scarcely any formal education so far as I can ascertain, he has no known occupation and he has virtually no previous exposure to legal procedures . . . ." (*Id.* at p. 215.) The appellate court reversed, concluding: "The record in the present case indicates that [defendant] was competent to stand trial and that he clearly sought to represent himself after being duly warned of the risks of doing so. Nevertheless, the [trial court] denied this request on the ground that [defendant] lacked the 'requisite education, background or training or experience.' *Faretta* imposes no such qualifications on the right to defend pro se." (*Id.* at p. 216.)

The United States Supreme Court reaffirmed these principles in *Godinez* v. *Moran, supra*, 509 U.S. at pages 399-402 [113 S.Ct. at pages 2687-2688, 125 L.Ed.2d at pages 332-334]. Commenting on those principles, the California Court of Appeal recounted that "*Godinez* establishes that the only requirements for a valid waiver of the right to counsel are: (1) a determination that the accused is competent to waive the right, i.e., whether he/she has the mental capacity to understand the nature and object of the proceedings against him/her, and (2) a finding that the defendant is able to make an intelligent and voluntary wavier, i.e., whether the defendant understands the significance and consequences of his/her decision, and whether that decision is uncoerced." (*People* v. *Poplawski* (1994) 25 Cal.App.4th 881, 894 [30 Cal.Rptr.2d 760].)

Recently in *People* v. *Marshall* (1997) 15 Cal.4th 1 [61 Cal.Rptr.2d 84, 931 P.2d 262], the California Supreme Court examined the propriety of a denial of a defendant's requests for self-representation. The high court held that "[a] motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied." (*Id.* at p. 23.) On the record before it, the high court found that defendant's requests "did not

represent an unequivocal and sincere invocation of the right of self-representation, and that they were made for the purpose of delay rather than a sincere effort to secure self-representation." (*Id.* at p. 27.)

Unlike the record in *Marshall*, there is nothing in the record in this case to support a claim that defendant's request was equivocal, made in anger or frustration or was otherwise asserted for the purpose of delay or frustration of the orderly administration of justice. Moreover, unlike cases such as *People* v. *Burnett* (1987) 188 Cal.App.3d 1314 [234 Cal.Rptr. 67], defendant's mental competence was not at issue. He understood clearly the nature of the proceedings against him. He also understood the significance and consequences of his decision to represent himself, and there was no suggestion that this decision was coerced.

Under these circumstances, the trial court erred in denying defendant's motion for self-representation.

As we have commented before: "Respect for the dignity and autonomy of the individual is a value universally celebrated in free societies and uniformly repressed in totalitarian and authoritarian societies. Out of fidelity to that value defendant's choice must be honored even if he opts foolishly to go to hell in a handbasket." (*People* v. *Nauton*, *supra*, 29 Cal.App.4th at p. 981.)

■ The denial of the right to self-representation is prejudicial per se, and we therefore reverse. (*People* v. *Joseph* (1983) 34 Cal.3d 936, 939, 946-948 [196 Cal.Rptr. 339, 671 P.2d 843]; *People* v. *Nauton*, *supra*, 29 Cal.App.4th at p. 981; see also *McKaskle* v. *Wiggins* (1984) 465 U.S. 168, 177, fn. 8 [104 S.Ct. 944, 950-951, 79 L.Ed.2d 122, 132-133].)

DISPOSITION

The judgment is reversed.

Puglia, P. J., concurred.

CALLAHAN, J., Dissenting.—The majority opinion holds that a defendant (1) who is represented by counsel whose competence is not questioned, (2) in the course of such representation knowingly and intelligently decides to plead guilty, and (3) whose claim of *Faretta* error does not involve the circumstances surrounding the plea itself, may nevertheless succeed in reversing his conviction by alleging erroneous denial of his pretrial *Faretta* motion at a time when he was contesting rather than admitting his guilt. (*Faretta* v. *California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562].) I disagree.

The starting point is Penal Code section 1237.5, subdivision (a), which limits an appeal by a defendant who pleads guilty or nolo contendere to "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings." As Justice Sparks explained in *People* v. *Turner* (1985) 171 Cal.App.3d 116, 125-126 [214 Cal.Rptr. 572]: "[A] guilty plea constitutes an admission of every element of the offense charged and constitutes a conclusive admission of guilt. [Citation.] It waives a trial and obviates the need for the prosecution to come forward with any evidence. [Citations.] A guilty plea thus concedes that the prosecution possesses legally admissible evidence sufficient to prove defendant's guilt beyond a reasonable doubt. . . . [¶] A guilty plea also waives any irregularity in the proceedings which would not preclude a conviction. [Citation.] Thus irregularities which could be cured, or which *would not preclude subsequent proceedings to establish guilt, are waived and may not be asserted on appeal after a guilty plea*. . . ." (Italics added, fn. omitted.)

The denial of a pretrial *Faretta* motion is *not* an irregularity which bars subsequent proceedings to establish guilt. Regardless of whether the motion is granted or denied, the People may go forward with their case against the defendant. Indeed, defendant's guilty plea takes the *Faretta* issue out of the litigable arena, because it *precludes a trial on the merits* and the taking of evidence. (*People* v. *Whitton* (1952) 112 Cal.App.2d 328, 333 [246 P.2d 60].) At that point, the manner in which defendant defends himself against the charges is truly moot.

Having pleaded guilty, "[a] defendant thereafter can raise only those questions which go to the power of the state to try him despite his guilt." (*People* v. *Turner, supra,* 171 Cal.App.3d at p. 126.) While *Faretta* safeguards a defendant's right to waive counsel and represent himself, the *exercise* of that right has absolutely no effect on the court's jurisdiction over him or the power of the state to try him despite his guilt. Thus, under the *Turner* test, the erroneous denial of a pretrial motion for self-representation is not an error cognizable after a guilty plea.

The majority claims that since a *Faretta* motion is not related to guilt and goes to the "legality of the proceedings" (presumably because self-representation is a constitutional right), it may be raised after a guilty plea. The majority misreads the rule.

First, the fact that *Faretta* is unrelated to guilt is a makeweight—there are a host of errors "unrelated to guilt," including those of constitutional magnitude, which are waived by a guilty plea. (See, e.g., *People* v. *Hernandez* (1992) 6 Cal.App.4th 1355, 1357 [8 Cal.Rptr.2d 324] [violation of constitutional right to speedy trial]; *People* v. *Lopez* (1988) 198 Cal.App.3d 135,

139-140 [243 Cal.Rptr. 590] [due process violation in state depriving defendant of a material witness]; *People* v. *Haven* (1980) 107 Cal.App.3d 983, 986 [167 Cal.Rptr. 376] [improper denial of motion to sever]; *People* v. *Padfield* (1982) 136 Cal.App.3d 218 [185 Cal.Rptr. 903] [prosecution barred by statute of limitations]; see also cases collected in *People* v. *Meyer* (1986) 183 Cal.App.3d 1150, 1157-1158 [228 Cal.Rptr. 635].)

Second, the majority ignores the language of California Supreme Court cases which state clearly that "legality of the proceedings" under Penal Code section 1237.5 means legality of the proceedings *which resulted in the plea.* (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 9 [136 Cal.Rptr. 409, 559 P.2d 1028]; *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872].) Once defendant has conceded " 'all matters essential to the conviction' " (*People* v. *Turner, supra,* 171 Cal.App.3d at p. 126), all issues going to his ability to prove or disprove his guilt or innocence are " '*removed from consideration.*' " (*People* v. *Shults* (1984) 151 Cal.App.3d 714, 719 [199 Cal.Rptr. 33] (opn. of Puglia, P. J.), italics added; see also *People* v. *Lopez, supra,* 198 Cal.App.3d at p. 142.) Put simply, whether a defendant defends the charges against him through counsel or on his own is not an issue which goes to the "jurisdiction or legality of the *proceedings resulting in the plea.*" (*People* v. *Kaanehe, supra,* at p. 9, italics added.)

The majority concludes *Faretta* error goes to the legality of the proceedings because the right to self-representation is derived from a defendant's Sixth Amendment right to counsel. However, this reasoning confuses the distinction between the right to counsel and the right of a defendant to represent himself. The two rights are not interchangeable as the majority implies—in fact they are "mutually exclusive." (*People* v. *Marshall* (1997) 15 Cal.4th 1, 20 [61 Cal.Rptr.2d 84, 931 P.2d 262].) "A defendant has the right to be represented by counsel at all critical stages of a criminal prosecution. [Citations.] At the same time, the United States Supreme Court has held that because the Sixth Amendment grants to the accused personally the right to present a defense, a defendant possesses the right to represent himself or herself. [Citation.]" (*Ibid.*) While the court has concluded the right to counsel is "self-executing," i.e., the defendant need make no request for counsel in order to be entitled to legal representation, and the right must be assiduously protected throughout the proceedings, "[t]he high court has not extended the same kind of protection to the right of self-representation." (*Marshall, supra,* at p. 20, citing *McKaskle* v. *Wiggins* (1984) 465 U.S. 168, 187-188 [104 S.Ct. 944, 955-956, 79 L.Ed.2d 122]; *Faretta* v. *California, supra,* 422 U.S. at p. 834, fn. 46 [95 S.Ct. at p. 2541, 45 L.Ed.2d at p. 581].)

A defendant's right to present his or her own defense is not only *not* self-executing, it must be timely and unequivocally asserted. (*People* v.

*Marshall, supra,* 15 Cal.4th at p. 21; *People v. Windham* (1977) 19 Cal.3d 121, 127-128 [137 Cal.Rptr. 8, 560 P.2d 1187].) At its core, a defendant's assertion of his *Faretta* rights is nothing less than an affirmative *waiver* of his constitutional right to counsel. Accordingly, the majority's attempt to place the improper refusal to allow the defendant to represent himself on the same plane as the denial of "effective assistance of counsel" is incorrect. *Faretta* itself refutes such a notion: "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' " (422 U.S. at pp. 834-835, fn. 46 [95 S.Ct. at p. 2541, 45 L.Ed.2d at p. 581].)

By jumbling the difference between the Sixth Amendment right to counsel, which automatically attaches at all stages of the proceedings, with the denial of a pretrial *Faretta* motion, the majority sidesteps the basic principles enunciated in *Turner.* A defendant who pleads guilty without effective assistance of counsel may raise that deprivation on appeal because the constitutional infringement unavoidably impairs his *ability* to enter a voluntary and intelligent plea. A defendant who desires to act as his own lawyer but is precluded from doing so stands on no such footing. His ability to intelligently decide whether to plead guilty is not impaired by having counsel assist him despite his wishes.[1]

Ten years ago in *People v. Lobaugh* (1987) 188 Cal.App.3d 780 [233 Cal.Rptr. 683], a defendant who pleaded guilty to robbery after denial of his motion for new counsel under *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] argued that he was entitled to a reversal of his conviction because the motion was erroneously denied. (188 Cal.App.3d at p. 783.) Though *Marsden,* like *Faretta,* is grounded in the Sixth Amendment right to counsel, this court had no trouble concluding that the issue was waived by defendant's guilty plea. "*Defendant makes no contention here that his guilty plea was not intelligently and voluntarily made. Nor does defendant urge that the advice be received from counsel was inappropriate concerning his plea resulting in the plea not being intelligently and voluntarily made.* The claimed *Marsden* error does not go to the legality of the proceedings resulting in the plea. [Citations.] The defendant is thus foreclosed from raising that issue on appeal." (*Lobaugh, supra,* at p. 786, italics added; accord, *People v. Gonzalez* (1993) 13 Cal.App.4th 707, 716 [16 Cal.Rptr.2d

---

[1]It is important to note that defendant does not attack his guilty plea on the grounds that he felt coerced to enter it because of the denial of his *Faretta* motion. Had he done so, an appealable issue might very well be raised, since the issue whether the plea was improperly induced goes directly to the legality of the proceedings *which resulted in the plea.* (See *People v. DeVaughn, supra,* 18 Cal.3d at p. 896.)

635].) The majority's decision in this case cannot be reconciled with *Lobaugh*.[2]

In sum, having failed to demonstrate that the improper denial of his *Faretta* motion affected the guilty plea, defendant may not raise *Faretta* error on appeal. When defendant accepted the lawyer the court appointed for him, and with the assistance of that counsel entered a voluntary and intelligent plea of guilty, he forfeited his right to reopen the academic question whether the court properly refused to allow him to represent himself during the adversarial stage of the proceedings.[3]

I would affirm the judgment.

Respondent's petitions for review by the Supreme Court were denied October 22, 1997. Baxter, J., was of the opinion that the petitions should be granted.

---

[2]One may well wonder what practical implications will flow from today's ruling. Will district attorneys and judges be as confident accepting guilty pleas where there has been a previous *Faretta* denial, knowing that the defendant has an "automatic reversal" ace up his sleeve? Will *Faretta* motions become increasingly more common as defendants discover that if they eventually decide to plead guilty, they will still have a chance to wipe the slate clean and start all over by invoking *Faretta* error? How many new habeas corpus petitions will suddenly surface based upon the fact that the defendant had a *Faretta* motion denied before he pleaded guilty?

As one federal appeals court recently observed: "Many a defendant would like to plant an error and grow a risk-free trial." (*U.S.* v. *Boyd* (7th Cir. 1996) 86 F.3d 719, 721-722.) The majority's decision gives them the seeds and the watering pail to grow a risk-free guilty plea.

[3]I would also reject defendant's alternative argument that the trial court abused its discretion in failing to set aside his guilty plea on the ground it was coerced by the district attorney's threat to prosecute his wife, an issue not reached in the majority opinion. At the time the plea was taken, the trial court asked defendant directly, *"Have you or anyone else been threatened in any way to get you to plead guilty,"* and defendant answered, "No." (Italics added.) The declarations of the witnesses to the alleged "threat" recited inconsistent versions of the same conversation. Finally, after accepting the negotiated plea, defendant confided to the police in a videotaped conversation, "[M]y attorney[] want[ed] me to take it [the plea] back because she knows we [could] beat the case." These items of evidence provided solid, tangible evidence supporting the court's denial of defendant's request to change his plea due to alleged prosecutorial extortion.