Filed 12/22/20  P. v. Godoy CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SAUL GODOY,<br><br>    Defendant and Appellant. | B297521<br><br>(Los Angeles County Super. Ct. No. BA454904) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William N. Sterling and Ray G. Jurado, Judges.  Affirmed as modified.

Emma Gunderson and Michael Tetreault, under appointments by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Heidi Salerno, Deputy Attorney General, for Plaintiff and Respondent.

————————————

The jury found defendant and appellant Saul Godoy guilty of second degree robbery (Pen. Code, § 211)[1] and attempted carjacking (Pen. Code, §§ 664, 215, subd. (a)). In a separate proceeding, the trial court found true the allegations that Godoy had two prior strikes under the three strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), a prior serious felony conviction under section 667, subdivision (a)(1), and two prison priors under section 667.5, subdivision (b). The court sentenced Godoy to ten years in prison, plus a five-year enhancement for the prior serious felony and a one-year enhancement for a prison prior under section 667.5, subdivision (b).[2]

Godoy contends that (1) the trial court erroneously denied his motion to represent himself without counsel under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*); (2)

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The trial court struck one of Godoy's strikes, and stayed one prison prior and the sentence for count two under section 654.

a conditional remand is warranted for the trial court to determine his eligibility for a mental health diversion program under section 1001.36; and (3) this court should strike his one-year prior felony conviction enhancement under section 667.5, subdivision (b).

We order that the abstract of judgment be modified to strike Godoy's one-year prior prison term sentencing enhancement.  As modified, the trial court's judgment is affirmed.

**FACTS**

*The offense conduct*

Around 7:30 p.m. on February 23, 2017, as Carmen R. returned home and was getting ready to lock her car, Godoy came up to her and tried to grab her keys out of her hand.  A physical struggle ensued, and Godoy took a set of keys from Carmen, but the set did not include the key to her car.  He entered the driver's side of the car.  When Carmen saw Godoy in her car, trying to start the car with the wrong key, she pushed the car door closed to trap him inside "so that somebody might come and get him."  Some neighbors came to assist, and they dragged Godoy out of the car.  He ran across the street.  Carmen called the police.

A police officer located Godoy in a transitional living residence across the street from where the incident took place.  Godoy was detained by law enforcement, and after

Carmen identified him as the person who took her keys, he was arrested and booked.  The arresting officer did not drug test Godoy, but described Godoy's demeanor as consistent with someone on methamphetamine.

*The criminal case – pretrial proceedings*

Godoy was charged with second degree robbery (§ 211 [count 1]) and attempted carjacking (§§ 664, 215, subd. (a) [count 2]).  Additional allegations stated that Godoy had prior serious felony convictions as defined by section 667, subdivision (a)(1), and section 667.5, subdivision (b).

At the arraignment hearing on April 24, 2017, the trial court granted Godoy's first request to represent himself under *Faretta*.  The court appointed stand-by counsel in case questions about Godoy's competency arose.  Godoy later filed a motion for discovery and a motion to dismiss.

On August 30, 2017, after Godoy announced he was ready for trial, the prosecution sought a competency evaluation, based on information about Godoy's past mental health treatment and his history of using psychiatric medication.  After hearing testimony from the investigator, the court (Judge C.H. Rehm, Jr.) declared a doubt as to Godoy's competency and ordered a competency evaluation, appointing Dr. Jack Rothberg as the evaluating psychiatrist.

Dr. Rothberg conducted a psychiatric evaluation on September 13, 2017, under Evidence Code section 730 and Penal Code section 1368, to assess Godoy's competency to

4

stand trial and his ability to represent himself. Dr. Rothberg concluded that Godoy was not competent to represent himself; Dr. Rothberg also had serious doubts about Godoy's competency to stand trial even if represented. According to Godoy, he developed post-traumatic stress disorder (PTSD) when he was 30 years old, attributing it to his time in the military. Godoy reported that he did not receive treatment for PTSD, but he had been treated with four different psychiatric drugs in the past, and in jail he was receiving three psychiatric drugs, and indicated he had been hearing voices and was paranoid. Godoy admitted to two different psychiatric hospitalizations, one at Stockton State Hospital and the other at Patton State Hospital; he also admitted that when he was hospitalized at Patton State in 2002, he was found incompetent. Godoy also admitted to using cocaine, methamphetamine, and marijuana. Dr. Rothberg's report expressed skepticism about Godoy's claims that he went to Loyola Law School, passed the bar exam, and worked for four years at a law firm. Godoy claimed he was a criminal defense attorney, and that he was disbarred after his felonies. Dr. Rothberg's summary of Godoy's mental status exam stated that while Godoy was pleasant and superficially cooperative, "[h]e admit[ted] to auditory hallucinations and described numerous ideas which appeared to be grandiose delusions. . . . His fund of knowledge, ability to abstract and general intellectual functioning seem to be impaired, as does his judgment." In the final portion of the report, Dr. Rothberg summarized, "Taking into consideration the fact

5

that a good deal of what [Godoy] told me is delusional, and even if much of what he said is accurate, it is logically incoherent and makes little sense. He acknowledges that he has been found incompetent in the past and, moreover, admits that he hears voices and has had delusions. It is quite apparent that Mr. Godoy is not competent to represent himself. Moreover, his lack of judgment due to delusional thinking raises some serious doubt of whether he is even competent if represented."

On October 6, 2017, at the request of Godoy's attorney (Madeline Chang), the court (Judge Rehm) appointed Dr. Risa Grand to conduct a second evaluation. Dr. Grand's report gave her conclusion that Godoy met the diagnostic criteria for PTSD, but that he was competent to stand trial. Dr. Grand also concluded that Godoy was rationally able to assist in his own defense so long as he continued to take psychotropic medications. She gave no opinion on whether Godoy was competent to represent himself.[3] Godoy reported graduating college and Loyola Law School, and said he practiced criminal law for two to three years until he was convicted of a felony and disbarred. Regarding his

---

[3] The trial court's letter of appointment for Dr. Grand included a request for evaluation of both Godoy's competency to stand trial with the assistance of counsel and his competency to present a defense without the benefit of counsel; however, Dr. Grand's report did not identify the latter issue among those for evaluation. The record on appeal contains no information as to why Dr. Grand did not address the issue of self-representation.

6

psychiatric history, Godoy reported he was treated at Patton State Hospital in 2002 for three months after being found incompetent to stand trial. He received treatment at the Westwood VA (U.S. Department of Veterans Affairs) for psychiatric illness, and had previously and was currently taking prescribed psychiatric medications. He denied any substance abuse history, but several of his prior convictions involved possession or sale of controlled substances. Dr. Grand reported that during Godoy's mental status exam, his speech was clear and he had appropriate eye contact. "He demonstrated good insight into the fact that he needs medication and highlighted that he suffers from [PTSD]." While he may have had more serious symptoms from his PTSD in the past, he reported his current psychiatric medications have alleviated his symptoms ["He reports good benefit of his symptoms . . . ."]. Godoy understood the charges against him and the roles of courtroom personnel. Godoy "indicated that he understands each of the plea options available and would consider a plea bargain if it would involve ongoing treatment at the VA and possible short sentence of two years or less." Dr. Grand found Godoy to be "psychiatrically quite stable with his psychotropic medication" and encouraged him to remain medication compliant. She expressed concern that he might destabilize if he discontinued his medication.

On December 12, 2017, the court held a competency hearing. Godoy appeared with counsel. The parties submitted on the reports of Dr. Grand and Dr. Rothberg.

The court (Judge Ray G. Jurado) found appellant mentally competent to stand trial under section 1368.

On March 5, 2018, appellant submitted a new *Faretta* waiver form and requested to represent himself. After reviewing Godoy's waiver form, the court (Judge Jurado) noted that Dr. Rothberg had found Godoy was not competent to represent himself, and that Dr. Grand found him competent to stand trial, but did not give an opinion on Godoy's competence to represent himself. The court indicated that it was denying Godoy's request to represent himself, finding Godoy was not competent to represent himself, based on Dr. Rothberg's opinion, and on the ground that the request was untimely, coming only 20 days before the scheduled jury trial. Defense counsel offered that Godoy was willing to submit to another examination on his competency for self-representation, but the court was not willing to put the case over for yet another doctor's opinion on competency. On the issue of timeliness, defense counsel stated that if the court permitted Godoy to represent himself, he would not need additional time, because he was already familiar with the case. The court repeated that it had found Godoy not competent to represent himself, and moved on to the possibility of a plea offer.

Ultimately, after a series of continuances, some stipulated and others requested by the defense, the trial commenced on September 12, 2018.

*Conviction and sentencing*

After a three-day jury trial at which Godoy was represented by counsel, a jury found Godoy guilty of second degree robbery (count 1) and attempted carjacking (count 2), on September 18, 2018. In a bifurcated proceeding, Godoy admitted to two prior strikes under the three strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), a prior serious felony conviction under section 667, subdivision (a)(1), and two prison priors under section 667.5, subdivision (b).

On March 15, 2019, Godoy was sentenced to 16 years in state prison. The court imposed the upper term of 5 years for count 1, doubled to 10 years as a second strike.[4] The court added a five-year sentencing enhancement under section 667, subdivision (a)(1) and a one-year sentencing enhancement under section 667.5, subdivision (b). For count 2, the court imposed the upper term of 54 months, plus an additional 54 months, for a total of 108 months, stayed pursuant to section 654. The court also struck the second prison prior enhancement (§ 667.5, subd. (b)).

---

[4] Although Godoy had previously admitted to two strikes, at sentencing, the trial court struck one of the strikes.

# DISCUSSION

## *Denial of Godoy's March 2018 Faretta Motion*

Godoy contends that the trial court erroneously denied his *Faretta* motion. We find no error, because there was substantial evidence to support the court's determination that based on Godoy's mental illness, he was incompetent to represent himself.[5]

### *Relevant law*

Pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant has a "'constitutional right to proceed *without* counsel when' [the] defendant 'voluntarily and intelligently elects to do so.' [Citation.]" (*Indiana v. Edwards* (2008) 554 U.S. 164, 170 (*Edwards*); see also *Faretta, supra,* 422 U.S. at pp. 818–832.) The "autonomy and dignity interests" that underlie this right are not defeated by "the fact or likelihood that an unskilled, self-represented defendant will perform poorly in conducting his or her own defense . . . ." (*People v. Mickel* (2016) 2 Cal.5th 181, 206 (*Mickel*).)

---

[5] Godoy's opening brief explains why his *Faretta* motion was timely. We need not consider the question of timeliness because we find the trial court's denial was supported by substantial evidence that Godoy was not competent to represent himself at trial.

A self-represented defendant need not meet the standards of an attorney or even be capable of conducting an "effective defense." (*Mickel, supra*, 2 Cal.5th at p. 206.) Indeed, a defendant's right to control his defense includes the right to decide to present no defense, or a defense that has little or no chance of success. (*Id.* at p. 209.) "[R]ecognizing a criminal defendant's right to self-representation may result "'in detriment to the defendant, if not outright unfairness.'" [Citation.] But that is a cost that we allow defendants the choice of paying, if they can do so knowingly and voluntarily." (*Id.* at p. 206.)

The right of self-representation, however, is not absolute. (*Mickel, supra*, 2 Cal.5th at p. 206; *Edwards, supra*, 554 U.S. at p. 171.) Most pertinent here, state courts have discretion to deny self-representation to individuals who are sometimes called "gray-area defendants"—those who fall in the "gray area" between being competent to stand trial if represented by counsel and yet "suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." (*Edwards, supra*, at pp. 172, 174, 178; see also *People v. Johnson* (2012) 53 Cal.4th 519, 528 (*Johnson*) [confirming trial courts may deny self-representation where *Edwards* permits such a denial].)

Competence to represent oneself at trial is defined as "the ability 'to carry out the basic tasks needed to present [one's] own defense without the help of counsel.' [Citation.]" (*Johnson, supra*, 53 Cal.4th at p. 530.) Both the United States Supreme Court and our Supreme Court have declined

11

to adopt a more specific competence standard for a defendant acting as his or her own attorney. (*Ibid.*) The high court has, however, noted the basic tasks needed to present a defense may include "organization of defense, making motions, arguing points of law, participating in voir dire, questioning witnesses, and addressing the court and jury." (*Edwards*, *supra*, 554 U.S. at p. 176, italics omitted.) "In other words, California courts have discretion to deny self-representation to so-called gray-area defendants—those who are mentally competent to stand trial if represented by counsel but not mentally competent to conduct the trial themselves—'in those cases where *Edwards* permits such denial.' (*Johnson*, *supra*, 53 Cal.4th at p. 528; see *Edwards*, *supra*, 554 U.S. at pp. 172–174 [discussing gray-area defendants].) Nevertheless, our Supreme Court has cautioned that '[s]elf-representation by defendants who wish it and validly waive counsel remains the norm and may not be denied lightly.' (*Johnson*, *supra*, at p. 531.)" (*People v. Gardner* (2014) 231 Cal.App.4th 945, 956 (*Gardner*).)

*Standard of review*

"'"Erroneous denial of a *Faretta* motion is reversible per se. [Citation.]" [Citation.]' . . . [Citation.]" (*People v. Becerra* (2016) 63 Cal.4th 511, 520.) The decision to deny a defendant's *Faretta* motion must be based on substantial evidence of defendant's competence; keeping in mind that determinations regarding self-representation are left largely

12

to the trial court's discretion.  (*Johnson, supra*, 53 Cal.4th at pp. 531–532 [finding no abuse of discretion where trial court's decision to revoke self-representation was based on substantial evidence]; *Gardner, supra*, 231 Cal.App.4th at pp. 959–960 [no abuse of discretion when there is substantial evidence to support trial court's denial of defendant's *Faretta* motion].)

*Analysis*

The trial court did not abuse its discretion when it denied Godoy's request for self-representation after the court had already inquired into Godoy's competence and found him competent to stand trial.  The court's decision was supported by substantial evidence because the court relied upon the expert opinion of Dr. Rothberg that Godoy lacked the necessary competence to represent himself at trial.  On the question of Godoy's competency to stand trial, Dr. Rothberg was more equivocal, stating that there were "serious doubts" about Godoy's competency, but stopping short of concluding that Godoy was incompetent to stand trial.

Godoy questions the evidentiary value of Dr. Rothberg's opinion, arguing that Dr. Rothberg "failed to rationalize [the] conclusory opinion" that Godoy was not competent to represent himself.  Godoy argues that because Dr. Rothberg acknowledged Godoy's ability to understand the nature of the proceedings against him, any concerns Dr. Rothberg had regarding his ability to conduct his own

13

defense were irrelevant to the question of his competency to invoke his right of self-representation.

Godoy's argument rests on a fundamental disagreement with Dr. Rothberg's conclusion that he is incompetent to represent himself, based on evidence he suffers from delusional thinking and his own admission that he hears voices, has had delusions, and has previously been found incompetent. But Godoy's disagreement with Dr. Rothberg's medical expert opinion does not diminish the evidentiary value of that opinion, nor does it persuade us that the trial court erroneously relied on Dr. Rothberg's opinion as the basis for denying Godoy's *Faretta* request in March 2018. Dr. Rothberg reported that Godoy was aware that the charges against him were serious and that he was facing a third strike. He understood the roles of different people involved with the trial, such as the judge, the jury, the prosecutor, and defense counsel. While Godoy presented as cooperative and pleasant during Dr. Rothberg's mental status exam, the exam also revealed that Godoy's general intellectual functioning and ability to abstract was impaired. In addition, Godoy admitted to auditory hallucinations and many of his ideas appeared to be grandiose delusions. Based on this evidence, Dr. Rothberg reached the conclusion that Godoy was not competent to represent himself at trial.

Godoy tries to distinguish *Gardner, supra,* 231 Cal.App.4th at page 960, arguing that the record here lacked evidence that he suffered from a severe mental illness that would impair his ability to participate in the trial process

14

and communicate with a jury.  The appellate court in *Gardner* affirmed the denial of defendant's *Faretta* motion based on a doctor's determination that while defendant demonstrated an understanding of legal terminology and the evidence against him, he lacked competence to represent himself at trial because his expressive language disorder prevented him from communicating coherently with the court or a jury.  (*Id*. at p. 954.)  While the expert opinion in *Gardner* focused on defendant's language deficits, it also noted that defendant lacked "'the higher cognitive abilities necessary to litigate his case in court.'"  (*Id*. at p. 960.)  Dr. Rothberg's expert opinion here was that even though Godoy presented as superficially pleasant and cooperative, deficits in his judgment, knowledge, ability to abstract, and general intellectual functioning were sufficiently significant to render him incompetent to represent himself.  Such an opinion is sufficient to support denying Godoy's *Faretta* motion.

Godoy also compares the facts of the current case to those at issue in *People v. Robinson* (1997) 56 Cal.App.4th 363, 367–368, where the trial court erroneously denied self-representation based on a belief that the defendant's minimal education and work experience were inadequate for him to represent himself on serious charges.  But Godoy acknowledges the *Robinson* case did not involve any question regarding the defendant's mental competence.  In addition, *Robinson* predated *Edwards* by more than 10 years, meaning that the U.S. Supreme Court had not yet even

15

recognized the state courts' discretion to deny a *Faretta* request brought by a defendant affected by mental illness, even where the defendant had been found competent to stand trial. (*Edwards, supra*, 554 U.S. at pp. 177–179.)

In his reply brief, Godoy disputes the People's assertion that he fell within the "gray area" discussed in *Edwards*, where he was competent to stand trial but not competent to represent himself. He asks this court to accept his characterization of his mental health as having improved as he resumed his medication regimen between Dr. Rothberg's examination in September 2017 and Dr. Grand's examination in December 2017, arguing that by the time he made his *Faretta* request in March 2018, he was no longer exhibiting any of the "common symptoms of severe mental illness" described in *Edwards, supra*, 554 U.S. at page 176.

There are several problems with Godoy's argument on this point. First, the evidence contradicts Godoy's assertion that his mental health had improved because he started taking medications. At the time of Dr. Rothberg's evaluation in September 2017, Godoy was already taking the same three medications that Dr. Grand noted in her report: Trazodone, Prozac, and Risperdal. Second, Dr. Grand's December 2017 report never gave an opinion on Godoy's competency to represent himself. Third, the record lacks any contemporaneous evidence of any changes in Godoy's mental status or competency between Dr. Rothberg's September 2017 report, and March 2018, when Godoy made his *Faretta* request. Notably, Godoy does not contend that the court

16

erred in declining his offer to submit to a new psychiatric evaluation.

On this record, we conclude that the court's reliance on Dr. Rothberg's September 2017 opinion to find Godoy lacked competence to represent himself at trial was not an abuse of discretion. Godoy's argument about his improved mental status is speculative at best, and nothing in the record here undermines the trial court's reliance on Dr. Rothberg's medical opinion that Godoy's mental illness precludes self-representation.

### *Mental Health Diversion*

Godoy seeks a conditional reversal, arguing the trial court abused its discretion by failing to consider whether he was eligible for a pre-trial mental health diversion program. Godoy argues the trial court had a sua sponte duty to consider his eligibility for mental health diversion under section 1001.36, in the absence of any request from the prosecution or the defense. The People respond that Godoy forfeited any claim of error by failing to request diversion or object to his sentence, and that Godoy has not shown an abuse of discretion. Godoy alternatively contends that his counsel's failure to request diversion constitutes ineffective assistance of counsel.

17

*Relevant law*

Section 1001.36, which initially took effect June 27, 2018, "gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders. (§ 1001.36, subd. (a).)" (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*); Stats. 2018, ch. 34, § 24.)[6] "If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. (§ 1001.36, subds. (a), (b)(3) & (c)(1).) The maximum period of diversion is two years. (*Id.*, subd. (c)(3).) If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. (*Id.*, subd. (d).) 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have

---

[6] Effective January 1, 2019, the Legislature amended section 1001.36 to specify that defendants charged with certain crimes, such as murder and rape, are ineligible for diversion. (*Frahs*, *supra*, 9 Cal.5th at p. 627.)

occurred.' (*Id.*, subd. (e).)" (*Frahs*, *supra*, 9 Cal.5th at p. 627.)

A trial court has discretion to grant pretrial diversion if it finds all of the following: (1) the defendant has been diagnosed with a qualifying mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or PTSD, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia; (2) the disorder was a significant factor in the commission of the charged offense; (3) in the opinion of a qualified mental health expert, defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment; (4) subject to certain exceptions related to incompetence, the defendant consents to diversion and waives his or her speedy trial rights; (5) the defendant agrees to comply with treatment as a condition of diversion; and (6) the court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety if treated in the community, as defined in section 1170.18. (§ 1001.36, subd. (b); *Frahs*, *supra*, 9 Cal.5th at pp. 626–627.)

*Analysis*

    A. <u>Facts and procedure</u>

    Godoy's trial started on September 12, 2018, more than two months after section 1001.36 took effect on June 27, 2018.[7] Nevertheless, there is no evidence in the record that Godoy or his counsel ever sought diversion under the newly-enacted statute, before or during his trial or sentencing. Other than the evidence pertaining to Godoy's competency to stand trial and to represent himself, the record contains very limited evidence about Godoy's mental health at the time of the offense.

    Carmen's son, Jeffrey, testified that on the same day his mother had her altercation with Godoy, Jeffrey and his grandmother had earlier observed Godoy on the sidewalk

---

    [7] In *Frahs,* the California Supreme Court held that section 1001.36 applies retroactively to cases in which the judgment is not yet final. (*Frahs*, *supra*, 9 Cal.5th at pp. 630–637 & fn. 2.) Specifically, in cases where section 1001.36 was enacted *after the defendant's conviction*, a conditional limited remand for a diversion eligibility hearing is warranted when the record "affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder [citation]." (*Frahs*, at p. 640.) Because section 1001.36 was enacted before Godoy's trial date, the question of retroactivity does not arise in this appeal.

and the parkway in front of the transitional living home, acting erratically and making angry gestures for more than 20 minutes.

Gary Willis, an assistant manager at Godoy's transitional living facility, testified that Godoy's behavior started to change a month or so before the offense. Willis was a mental health patient, and he observed that Godoy was not acting like his normal upbeat self. Willis suspected Godoy had stopped taking his medications and had asked Godoy about that. Godoy had stopped interacting with the other residents and was exhibiting hoarding behavior, keeping trash and broken electronics in his room. Out of concern for Godoy's safety, Willis and the owner of the transitional living facility removed the door to Godoy's bedroom.

Rocio Ballesteros-Molina, Godoy's parole officer, testified that outpatient mental health counseling was a condition of Godoy's parole. She made a routine visit and saw Godoy around 6:30 p.m. on the day the offense took place. While he was normally calm during her visits, on this occasion he seemed agitated, and did not know why she was there to see him. She asked him to drug test; he was unwilling to do so, but he agreed to come to her office the next day to drug test.

Outside the presence of the jury, the court heard limited testimony from the county psychiatrist who was treating Godoy while he was in jail before and during trial. She testified she had diagnosed Godoy with adjustment

21

disorder with depression and major depressive disorder with psychotic features. Because her testimony was not relevant to the element of specific intent, the court did not permit her testimony before the jury.

B. <u>Forfeiture</u>

Godoy seeks remand to allow him to pursue a section 1001.36 pretrial diversion program that he did not pursue below. Despite the fact that the statute authorizing the program was enacted before he was tried, convicted, and sentenced, Godoy did not seek to develop a record to support a section 1001.36 motion, focusing instead on his mental health as it related to his competency to stand trial and represent himself. He therefore forfeited the issue on appeal. (*People v. Carmony* (2004) 33 Cal.4th 367, 375–376 (*Carmony*) [failure to seek dismissal pursuant to section 1385 forfeits right to raise issue for first time on appeal].)

C. <u>Statutory text does not impose a sua sponte duty on the trial court</u>

Seeking to overcome forfeiture, Godoy contends that when there is evidence to support a finding of eligibility for mental health diversion, the court has a sua sponte duty to determine whether the defendant is eligible, even without a request by the defendant. According to Godoy, because the trial court failed to hold a hearing despite evidence that he

22

was eligible for mental health diversion, he is entitled to a conditional reversal and remand to allow the court to carry out its statutory duty.  Godoy argues that the language of section 1001.36, subdivision (a), puts the court in the driver's seat:  "On an accusatory pleading . . . , the court may, after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant . . . ."  (§ 1001.36, subd. (a).)  He argues that interpreting this language as requiring a defendant to request diversion would render superfluous one of the criteria for eligibility, that the defendant consents to diversion.  (§ 1001.36, subd. (b)(1)(B).)

"When we interpret statutes, our primary task is to determine and give effect to the Legislature's purpose in enacting the law.  [Citations.]  We first look to the words of the statute, as they are generally the most reliable indicators of the legislation's purpose.  [Citations.]  To further our understanding of the intended legislative purpose, we consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme." (*In re H.W.* (2019) 6 Cal.5th 1068, 1073; see also *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192.)  Common principles of statutory interpretation establish that, absent evidence to the contrary, the word "may" grants permissive or discretionary authority, while in contrast the word "shall" is directive or mandatory.  (*Zamudio*, *supra*, at p. 194 [the word "shall" is ordinarily construed as mandatory, unless such a construction would imply an unreasonable legislative

purpose]; *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1143 [the word "'may'" is ordinarily deemed permissive]; *Ajaxo, Inc. v. E\*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 165 [use of word "may" gave trial court discretion to award royalties, but did not require such an award]; *Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 946 [when the Legislature uses both the terms "shall" and "may" in the same statute, the word "shall" is construed as mandatory, not permissive].)

Godoy's argument rests on a statutory provision where the Legislature has used the word "may," which is permissive, not mandatory. In the same statutory scheme, the Legislature used the word "shall" when the court is required to act. For example, "[u]pon request, the court shall conduct a hearing to determine whether restitution . . . is owed to any victim as a result of the diverted offense . . ." (§ 1001.36, subd. (c)(4)) and upon satisfactory completion of diversion, "the court shall dismiss" the relevant charges (*id.*, subd. (e)).

We are unpersuaded by Godoy's argument that unless the statutory language is read as requiring the court to exercise its sua sponte duty to consider a defendant's eligibility for diversion, the requirement for defendant's consent to diversion is superfluous. It is more likely that the language reflects a legislative intent to permit either the prosecution or the defense to request diversion. If the prosecution requests diversion, the defendant still bears the

24

burden of showing he or she can meet the minimum eligibility requirements, including consenting to diversion. (§ 1001.36, subd. (b)(1)(B).)  The following language logically flows from such an interpretation:  "At any stage of the proceedings, the court *may* require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion." (§ 1001.36 (b)(3), italics added.)

Based on our reading of the statutory text, we reject Godoy's argument that the trial court has a sua sponte duty to conduct an eligibility hearing for a defendant when there is some evidence that the defendant may be eligible for diversion.

### D. Ineffective assistance of counsel argument

Alternatively, Godoy argues that his counsel's failure to seek pretrial diversion constituted ineffective assistance of counsel.

"In order to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–692.)  To demonstrate deficient performance, defendant bears the burden of showing that counsel's performance ""'fell below an objective standard of reasonableness . . . under prevailing

professional norms."'"" (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) To demonstrate prejudice, defendant bears the burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. (*Ibid.*; *In re Harris* (1993) 5 Cal.4th 813, 833.)" (*Mickel, supra*, 2 Cal.5th at p. 198.)

"It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009; accord, *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267 (*Mendoza Tello*) [habeas corpus is the more appropriate procedure to address an ineffective assistance of counsel claim because it may include evidence of an attorney's reasons for making the complained-of decision, which is outside the appellate record].)

As our Supreme Court has observed, "certain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding. [Citations.] The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no

26

basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Mickel, supra,* 2 Cal.5th at p. 198; see also *People v. Snow* (2003) 30 Cal.4th 43, 94–95; *Mendoza Tello, supra,* 15 Cal.4th at pp. 266–267.) The record before us poses such practical constraints and precludes us from finding ineffective assistance of counsel.

Godoy contends that defense counsel's performance fell below an objective standard of reasonableness. He argues that because section 1001.36 was an important change in the law, creating a diversion program for a large class of defendants with mental health issues where few diversion programs previously existed, any reasonably competent attorney would have investigated his or her client's eligibility for diversion. He also argues that because diversion would have resulted in him avoiding a 16-year prison sentence, the benefits were so clear there could be no satisfactory tactical reason for his counsel's failure to request diversion. We disagree on both counts.

First, there is no evidence in the record that defense counsel was unaware of section 1001.36 once it was enacted. Second, counsel could have chosen not to request diversion for a variety of reasons. For all we know, counsel discussed the matter with Godoy, and he may have refused to consent to diversion, waive his speedy trial rights, or agree to comply with mental health treatment. (§ 1001.36, subds. (b)(1)(D) & (E).) Even if we assume that Godoy had a recent diagnosis

27

by a qualified mental health expert that he suffered from a qualifying disorder (*id.*, subd. (b)(1)(A)), counsel might have determined that there was not enough evidence to demonstrate that the disorder "substantially contributed" to Godoy's commission of the offense (*id.*, subd. (b)(1)(B)) or that the "symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment" (*id.*, subd. (b)(1)(C)).

### *Striking one-year prior prison term sentencing enhancement*

Godoy contends this court should strike the one-year prior prison term enhancement imposed pursuant to section 667.5, subdivision (b), because the California Legislature subsequently amended that section, effective January 1, 2020, to only apply to prior prison terms based on specified sexually violent offenses. (Sen. Bill No. 136 (2019–2020 Reg. Sess.).)

Godoy's one-year prior prison term enhancement was based on a conviction of unlawful taking of a vehicle (Veh. Code, § 10851). Because that crime is not an enumerated sexually violent offense (Welf. & Inst. Code, § 6600, subd. (b)), we agree with the parties that the amended law applies to him retroactively, and the one-year enhancement should be stricken. (*People v. Reneaux* (2020) 50 Cal.App.5th 852, 876 [Senate Bill No. 136 applies to non-final judgments on appeal]; see *In re Estrada* (1965) 63 Cal.2d 740, 744–746

[absent evidence of contrary legislative intent, statutory amendments that reduce punishment apply to all defendants whose judgments were not yet final when the law took effect].)

## DISPOSITION

The judgment is modified to strike Godoy's one-year prior prison term sentencing enhancement. (§ 667.5, subd. (b).) As so modified, the judgment is affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward it to the Department of Corrections and Rehabilitation.


MOOR, J.

We concur:



BAKER, Acting P. J.



KIM, J.